Julio C. & Silvia G. IGLESIAS, et al., Plaintiffs,

v.

CENTRAL INTELLIGENCE AGENCY, et al., Defendants.

Civ. A. No. 80–2276.

United States District Court, District of Columbia.

Oct. 21, 1981.

Sydney J. Butler, Richard A. Gladstone, John M. Himmelberg, Barnett, Alagia & Carey, Washington, D. C., for plaintiffs.

John C. Martin, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

### I. INTRODUCTION

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.* (1976). Plaintiffs challenge the withholding of various documents by a number of government agencies to whom FOIA requests were submitted during the months of August through October, 1979. Although a great amount of information was released to plaintiffs pursuant to these requests, hundreds of pages of documents have been withheld in part or in full under Exemptions 1, 3, 4, 5, 6, 7(A), 7(C) and 7(D). 5 U.S.C. § 552(b) 1, 3, 4, 5, 6, 7(A), 7(C), and 7(D) (1976).[1] After conducting a *de novo* review of the agency action herein pursuant to the standards established by the Court of Appeals,[2] this Court concludes that, with minor exceptions, the defendants have exercised the various exemptions from disclosure properly, and in so doing have provided a sufficiently detailed index and description of the documents in question to satisfy the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

### II.

A. Exemption 1, 5 U.S.C. § 552(b)(1).

Exemption 1 protects from mandatory disclosure all matters which are:

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interests of national defense or foreign policy and (B) are in fact properly classified pursuant to such an Executive Order.

To support an Exemption 1 claim, the agency has the burden of demonstrating that the document in question was properly classified under both the procedural and substantive criteria contained in the governing Executive Order. *Lesar v. United States Department of Justice*, 636 F.2d 472, 483 (D.C.Cir.1980). In addition, "substantial weight" is to be accorded the agency affidavits in the context of Exemption 1, since it has been recognized that the Executive departments responsible for national defense and foreign policy matters have "unique insight" into potential adverse consequences of disclosure.[3]

The Central Intelligence Agency (CIA) has withheld two documents under this exemption which originated in the National Security Agency (NSA) and which are intelligence product derived from the interception of foreign electro-magnetic transmissions. Defendant CIA submits that the reports withheld were properly classified as "SECRET" pursuant to Executive Order 11,652, which authorizes such classification to be employed if the release of the information "reasonably could be expected to cause serious damage to the national securi-

---

**1.** Defendant Executive Office for the United States Attorneys has also withheld ten documents as being outside the scope of the FOIA.

**2.** In *Ray v. Turner*, 587 F.2d 1187 (D.C.Cir. 1978), the Court summarized the procedural steps to be employed in FOIA litigation as follows:

(1) [The Court should require] that the agency submit a "relatively detailed analysis [of the materials withheld] in manageable segments." [C]onclusory and generalized allegations of exemptions would no longer be accepted.... (2) "[A]n indexing system

[that] would subdivide the document under consideration into manageable parts" ... would allow the district court and opposing counsel to locate specific areas of dispute ... (3) "[A]dequate adversary testing" would be insured by opposing counsel's access to the information ... and by *in camera* inspection, guided by the detailed affidavit.

**3.** S.Rep.No.93–1200, 93d Cong., 2d Sess. 12 (1974), reprinted in 1974 U.S.Cong. Code & Admin.News pp. 6267, 6290.

ty." Eugene F. Yeates, Director of Policy of the NSA submitted a lengthy affidavit in support of the decision to withhold these documents, describing in detail the nature of the reports, their origin and sensitivity as well as the expected adverse consequences should the reports, or any part thereof, be released. This Court concludes that the description provided fully discharges the agency's burden to establish that the documents have been properly classified.

Indeed, plaintiffs do not quarrel with the classification, but instead generally assert that there are segregable portions of the reports which contain purely factual data which should be excised and released. However, the Yeates affidavit makes perfectly clear that such portions are in fact not segregable. Each document is described as a "totally integrated intelligence product" of which no part can be released without tending to reveal the nature of the communication as well as the present interception capabilities of the NSA. The release of this information would impose irreparable harm upon the information gathering capability of the NSA since a foreign power might, through access to the information, be able to defeat the interception operation at that location.

■■■ In the instant case, the Yeates affidavit is both detailed and specific to the extent that it may be without revealing the protected information. As the Court of Appeals held in *Hayden v. National Security Agency*, 608 F.2d 1381 (D.C.Cir.1979), the affidavit supplied in the context of Exemption 1:

> must provide specific information sufficient to place the document within the exemption category, [and] if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, summary judgment is appropriate without *in camera* review of the documents.

4. The Court also recognized the unique situation which exists in the context of NSA signal intelligence operations:

> [W]ith respect to NSA's signal intelligence operations, the sensitive material comprises more than just the substantive content of the messages. Harm could follow from the dis-

608 F.2d at 1387.[4] Plaintiffs have presented no evidence of agency bad faith nor have they contradicted, with any degree of certainty, the clear statements made by the NSA in support of its decision to withhold. Bald assertions by the plaintiffs that portions of the reports are segregable cannot support their request for *in camera* inspection nor will it defeat the CIA's Motion for Summary Judgment. The application of Exemption 1 in this circumstance is well founded; thus, summary judgment in favor of the CIA is appropriate.

**B. Exemption 3, 5 U.S.C. § 552(b)(3).**

■■■ Exemption 3 has been invoked in a number of contexts and in conjunction with various statutes. The exemption provides that disclosure is not required under the FOIA of matters which are:

> specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (a) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (b) establishes particular criteria for withholding or refers to particular types of matters to be withheld....

This exemption has been construed to require the withholding statute to either incorporate a Congressional mandate of confidentiality which is absolute and without exception or alternatively provide a formula or certain criteria for withholding whereby an administrator can determine precisely whether disclosure would pose the hazard that Congress foresaw. *American Jewish Congress v. Kreps*, 574 F.2d 624, 628–629 (D.C.Cir.1978). Since Exemption 3 has been utilized in conjunction with a number of withholding statutes, each is treated separately below.

> closure of any material that might help to identify the communication.... Indeed, NSA does not allege that the substance of the communication is sensitive, except insofar as it helps identify which communications have been of interest....
> 608 F.2d at 1385.

1. 18 U.S.C. § 798, 50 U.S.C. § 403(d)(3) and the National Security Act of 1959 (Section 6, Public Law 86–36).

■ Defendant CIA alternatively relies on Exemption 3 in connection with 18 U.S.C. § 798, 50 U.S.C. § 403(d)(3) and the National Security Act of 1959 (Section 6, Public Law 86–36). Exemption 3 is clearly applicable and vis-a-vis Public Law 86–36 was properly employed.[5] Section 6(a) of Public Law 86–36 provides that:

> [e]xcept as provided in subsection (b) of this section, nothing in this Act or any other law ... shall be construed to require the disclosure of *the organization or any function of the National Security Agency, of any information with respect to the activities thereof,* or the names, titles, salaries, or number of the persons employed by such agency. (emphasis added).

This statute has already been firmly established as an Exemption 3 statute since it specifies the matters which must be withheld and contains the proper Congressional mandate that confidentiality is absolute and without exception. *Hayden v. National Security Agency,* 608 F.2d 1381 (D.C.Cir.1979), *Founding Church of Scientology v. National Security Agency,* 610 F.2d 824 (D.C.Cir. 1979). In *Hayden,* the Court concluded that Congress was fully aware of the "unique and sensitive activities" of the NSA which require "extreme security measures". 608 F.2d at 1390, *citing* S.Rep.No.284, 86th Cong., 1st Sess. 3 (1959). The Court further held that the showing which the agency must make with respect to the application of Exemption 3 is factually less demanding than that which is required under Exemption 1, and that for Exemption 3's purpose, the initial affidavit describing how the release of the reports would reveal the nature of the NSA's intelligence activity was fully sufficient. Such disclosure is *expressly* prohibited by Public Law 86–36 and therefore the FOIA has no application.

In the instant case, the documents in question are of the same nature as those involved in *Hayden,* and that Court's application of Public Law 86–36 is therefore controlling. The Yeates affidavit states in no uncertain terms that disclosure of these documents would reveal information relating to the "activities" of the NSA, thus, summary judgment is appropriate for the CIA on the alternative grounds of Exemption 3.

2. Internal Revenue Code § 6103(a).

■ The Internal Revenue Service (IRS) has alleged that four documents are, in part, exempt from disclosure through Exemption 3 in conjunction with Internal Revenue Code § 6103(a). Section 6103(a) provides that:

> [N]o officer or employee of the United States ... shall disclose any return information obtained by him in any manner in connection with his service as an officer or an employee or otherwise under the provisions of this section.

Plaintiffs have not contested the application of this withholding statute, and it is apparent from the affidavit provided by the IRS that the names of third parties have been properly withheld. *See Neufeld v. Internal Revenue Service,* 646 F.2d 661 (D.C.Cir.1981) (return information includes any information that directly or indirectly identifies a particular taxpayer). Summary judgment is appropriate with respect to those portions of documents which are withheld as "return information" under IRC § 6103(a).

3. Rule 6(e), Federal Rules of Criminal Procedure.

■ A number of defendants, including the United States Customs Service, the Executive Office of the United States Attorneys (EOUSA), the Criminal Division of

---

**5.** Reliance on 18 U.S.C. § 798 may be misplaced since that statute does not proscribe disclosure but instead merely makes it a criminal offense to disclose certain information concerning communication intelligence activities. Although 50 U.S.C. § 403(d)(3) has been held to be a proper withholding statute for Exemption 3 purposes, *see, Phillippi v. Central Intelligence Agency,* 546 F.2d 1009, 1015 n.14 (D.C.Cir.1976), this Court's application of Public Law 86–36 makes consideration of § 403(d)(3)'s relevance in this situation unnecessary.

the Justice Department and the IRS have withheld documents in whole or in part pursuant to Exemption 3 in conjunction with Federal Rule of Criminal Procedure 6(e). Rule 6(e) provides in part that no one shall "disclose matters occurring before the Grand Jury except as otherwise provided for in these rules". It is settled that Rule 6(e) is a withholding statute for the purposes of Exemption 3. *Fund for Constitutional Government v. National Archives and Records Services*, 656 F.2d 856 (D.C.Cir. 1981).

Initially, the court must determine whether the withheld documents are grand jury material, and if so whether any exception would authorize disclosure. If an exception to the general ban on disclosure is applicable, the court must conduct a balancing test, weighing the interest in continued secrecy against the particular interest in disclosure. *See, Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). Otherwise, the inquiry ends when the court concludes that the documents do in fact reflect matters occurring before the grand jury, and disclosure is prohibited. *In re Grand Jury Impanelled October 2, 1978*, 510 F.Supp. 112, 114 (D.D.C.1981).

Plaintiffs claim that many of the documents withheld are not within the scope of Rule 6(e) because they do not reflect matters which occurred before the grand jury. A related contention is that the defendants have not described the documents withheld in a manner sufficient to satisfy the *Vaughn* requirement. *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Also, Plaintiffs contend that even if the documents fall within the confines of Rule 6(e), the exception which allows disclosure "when so directed by a court preliminarily to or in connection with a judicial proceeding" is applicable. Rule 6(e)(3)(C)(i). It is alleged that the information withheld must be obtained to prevent injustice in two civil actions now pending in Massachusetts and Florida.

On November 4, 1974, Judge Charles Scott of the United States District Court for the Middle District of Florida (who presided over the grand jury investigation from which the sought-after documents were produced) authorized the United States Attorney to disclose grand jury material to agents and employees of the Customs Service and the Federal Energy Administration so they might assist the government in its efforts with respect to the grand jury investigation. The order authorizing disclosure specifically provided that the material "shall remain at all times under the aegis of the attorneys for the government." A similar order was issued with respect to the IRS on December 2, 1974.

Both the Customs Service and the IRS have withheld portions of documents under Rule 6(e) which contain information that was made available to them under the respective court orders. Given the wording of the orders as well as the context in which they were issued, it is evident that this information is material which directly arose from the grand jury investigation and is therefore expressly protected from further disclosure by that same order which provided access thereto. Defendants Custom Service and IRS have properly classified these documents as grand jury material.

The EOUSA has withheld a large number of documents or portions thereof under Exemption 3 in conjunction with Rule 6(e). Plaintiffs contend generally that many of the documents are not in fact grand jury material but instead are "letters, comments or other data which allegedly have some connection with grand jury material...." Plaintiff's interpretation of the scope of Rule 6(e)'s protection is too narrow. The interests of secrecy prevent not only disclosure of transcripts and documents which were directly involved in the investigatory process, but of all information "which would reveal the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors and the like." *Fund for Constitutional Government v. National Archives and Rec-*

*ords Service,* 656 F.2d 856 (D.C.Cir.1981), *Securities and Exchange Commission v. Dresser Industries,* 628 F.2d 1368, 1382 (D.C.Cir.1980), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Thus, Rule 6(e) embodies a broad sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which such material is contained.

The segments withheld by the EOUSA contain information which would identify the names of actual or potential witnesses; federal employees or agencies who had access to grand jury material; parties whose records were subpoenaed before the grand jury; the criminal violations which were under consideration; documents which were subpoenaed and/or presented to the grand jury; grand jury pleadings; considerations concerning the granting of witness immunity to certain witnesses; transcripts of grand jury testimony; and the substance of handwritten notes which discuss strategy, planning or specific occurrences before the grand jury. The Nellor affidavit demonstrates that the EOUSA carefully considered each and every document which was withheld in order to comply as fully as possible with plaintiff's FOIA request. All of the withheld material was properly classified as grand jury matter.

The Criminal Division has withheld ten documents in whole or in part under Exemption 3 in conjunction with Rule 6(e). Although some of these documents are not as fully described as those withheld by the EOUSA, this Court is satisfied that the Criminal Division has studied each document carefully and has excised only those portions which would reveal the inner workings of the grand jury. The fact that almost every document is analyzed in a sentence by sentence manner indicates careful consideration of the information contained therein.

Plaintiffs further allege that even assuming the material can be characterized as that which was before a grand jury, it is "mere documentary information" which is sought for its intrinsic value and not to learn of what transpired before the grand jury. The case of *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52 (2d Cir. 1960) is cited in support of this proposition. In that case, the Interstate Commerce Commission sought financial and accounting records which had been previously subpoenaed and presented to a grand jury. Defendants tried to block the release of these records on the basis of Rule 6(e), but the Court ruled that:

> it is not the purpose of the Rule to foreclose from all future revelation to *proper authorities* the same information or documents which were presented to the grand jury. Thus, when testimony or data is sought for its own sake—for its intrinsic value *in the furtherance of a lawful investigation*—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury. (emphasis added).

280 F.2d at 54.

That case is wholly inapposite to the situation now before this Court. Not only is plaintiffs' reliance on the case misplaced, but the contention that the documents withheld in the instant action resemble the kind of "documentary" material which was disclosed in *Interstate Dress Carriers, Inc., supra,* is contradicted by the clear descriptions thereof found in the various affidavits submitted to this Court. This is not an instance where the information sought was coincidentally before a grand jury and the disclosure thereof would not elucidate the inner workings of the grand jury. On the contrary, the information sought herein is composed largely of items which were specifically prepared for and during the grand jury investigation. Furthermore, the plaintiffs are not "proper authorities" seeking the information in the furtherance of a lawful investigation.[6] The information

---

**6.** *In Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856 (D.C.Cir.1981), the Court further warned that:

sought is inextricably intertwined with the grand jury proceeding, and disclosure is not warranted under the rationale of *Interstate Dress Carriers, Inc.*

The fact that all the withheld documents are properly within the scope of Rule 6(e) does not prohibit disclosure if an exception to the Rule is applicable and the balancing test favors disclosure as opposed to continued secrecy. The Supreme Court recently articulated the standard which should be applied in evaluating a request for grand jury information in *Douglas Oil Co. v. Petrol Stops Northwest*, 411 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979):

> From *Proctor & Gamble* and *Dennis* emerges the standard for determining when the traditional secrecy of the grand jury may be broken: Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

411 U.S. at 222, 99 S.Ct. at 1674.

Plaintiffs allege that disclosure of the grand jury material is warranted under Rule 6(e)(3)(C)(i) which permits disclosure "when so directed by a court preliminarily to or in connection with a judicial proceeding." Plaintiffs are currently involved in a tax deficiency redetermination hearing in Florida and a civil action in the State of Massachusetts, and contend that the information sought is needed to obtain a just result in these proceedings. Plaintiffs argue that the balancing test tilts in favor of disclosure, basing this argument largely on the fact that the relevant grand jury proceedings ended years ago and *no further investigations are pending* related to those proceedings. Because the proceeding has concluded, it is argued that the continued need for secrecy is no longer paramount. Although there is some merit to this argu-

ment, it alone cannot support the plaintiffs' request to expose the secret inner workings of the grand jury. As the Court noted in *Douglas Oil Co. v. Petrol Stops Northwest*, 411 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979):

> In considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties.... Thus, the interests of grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

441 U.S. at 222, 99 S.Ct. at 1674.

Plaintiffs have not satisfied their burden of establishing a "particularized need" for disclosure which "outweighs the policy of secrecy". *Pittsburg Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959). Nor have they complied with the tripartite test set forth by the Supreme Court in *Douglas Oil Co., supra.* Furthermore, this Court has no first hand knowledge of either proceeding in which the plaintiffs now find themselves. The descriptions thereof are sketchy, and a general allegation that release of the information would avoid a possible injustice therein has not made it possible for this Court to "weigh *in an informed manner* the need *for* disclosure against the need for maintaining grand jury secrecy." *Douglas Oil Co., supra*, 411 U.S. at 226, 99 S.Ct. at 1676 (emphasis added). All of the withholdings pursuant to Exemption 3 in conjunction with Rule 6(e) are within the scope of the rule and are satisfactorily described. No compelling need for disclosure has been shown.

C. Exemption 4, 5 U.S.C. § 552(b)(4).

The Criminal Division has applied Exemption 4 to three documents which have been withheld in their entirety. Exemption

[t]he relevant inquiry is not whether the party seeking the information has an interest other than in its role in a grand jury investigation but whether revelation in the particular context would in fact reveal what was before the grand jury.

4 relieves from mandatory disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." There is no allegation by the defendant that trade secrets are involved, rather only that disclosure of the requested documents would reveal "confidential commercial or financial information ... to the competitive and business disadvantage of the companies involved."

██ Little legislative history exists concerning the terms "commercial or financial" and the courts have generally given them their ordinary, common sense meanings. *Board of Trade of the City of Chicago v. Commodity Futures Trading Commission*, 627 F.2d 392 (D.C.Cir.1980). However, the term "confidential" as it applies to Exemption 4 has been the subject of considerable interpretation. In *National Parks & Conservation Association v. Morton*, 498 F.2d 765 (D.C.Cir.1974), the Court held that it is not sufficient that the information is not customarily available to the public. It also must be of the nature that:

> disclosure of the information is likely to have either of the following effects: (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

498 F.2d at 770.

It is apparent from the descriptions provided in the Buckley affidavit that the information withheld is of a commercial or financial nature. The more difficult question is whether this commercial information should be considered "confidential" within the scope of Exemption 4. The affidavit contains no statement of how the information was procured, nor does it state whether the agency provided the suppliers thereof with a promise or even an expectation of confidentiality. It does provide a general exposition of why it is necessary, when there is an expectation of privacy, to honor these expectations in order to continue to obtain the desired information from the private sector. There is, however, a notable absence of any allegation that the parties involved in this particular document request were given any indicia at all of confidential treatment. The possibility that the government's ability to obtain like information in the future will be impaired is not demonstrated in the affidavit and therefore cannot support the Exemption 4 claim.

██ Notwithstanding the lack of an express promise of confidentiality, many cases have turned on the question of whether release of the information will be likely to cause substantial competitive harm to the parties involved. *See, Sears, Roebuck and Co. v. General Services Administration*, 553 F.2d 1378 (D.C.Cir.1977), *Indian Law Resource Center v. Department of Interior*, 477 F.Supp. 144 (D.D.C.1979). Due to the inherent nature of commercial information, a limited description thereof must often satisfy the *Vaughn* requirement. However, conclusory and generalized allegations of "competitive harm" are unacceptable and will not support the agency's decision to withhold. *National Parks & Conservation Association v. Kleppe*, 547 F.2d 673, 680 (D.C.Cir.1976).

██ In the case at bar, a contract relating to fuel oil, a warehousing agreement and a letter concerning the latter have been withheld. The documents are described in a cursory manner, and no full explanation or other supporting detail has been provided which demonstrates *why* disclosure would result in competitive harm. In *National Association of Government Employees v. Campbell*, 593 F.2d 1023 (D.C.Cir. 1978), the Court held that conclusory affidavits alleging consequences of "competitive harm" without the requisite evidentiary details would not support the agency's motion for summary judgment. *See also, Pacific Architects and Engineers, Inc. v. Renegotiation Board*, 505 F.2d 383 (D.C.Cir.1974) (case remanded to district court for further fact finding, competitive harm must be supported by "specific factual or evidentiary material"), *Johnson v. Department of Health, Education and Welfare*, 462 F.Supp. 336 (D.D.C.1978) (documents ordered to be submitted for *in camera* inspection to determine the likelihood of competitive injury),

*Sears, Roebuck and Co. v. General Services Administration*, 553 F.2d 1378 (D.C.Cir. 1977) (conflicting affidavits on the question of competitive injury require at least limited discovery for resolution and if necessary the issue should be "tried like any other adversary proceeding").

Although this Court might infer from the nature of the documents and the general descriptions provided that competitive injury could arise from their release, "the court's surmise, however plausible on its face, cannot substitute for full bodied truth." *Campbell, supra*, 593 F.2d at 1028. The defendant has not fulfilled its obligation to provide this Court with evidence that competitive harm is imminent should this information be disclosed, and absent a more complete showing of such harm, these documents must be released.

D. Exemption 5, 5 U.S.C. § 552(b)(5).

 Several defendants have relied on Exemption 5, claiming either that the withheld documents consist of attorney work product or represent the deliberative processes which take place within the agency. Exemption 5 relieves from mandatory disclosure "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency." The exemption is intended, with qualification, to incorporate the common law privileges from discovery in litigation. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) (discovery rules should be applied to FOIA cases only by way of rough analogy). Under the attorney work-product privilege, documents prepared in anticipation of litigation and which reveal the theory of the case or litigation strategy are protected. *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980). Under the deliberative process privilege, protection is granted to documents which contain internal communications consisting of advice, recommendations, opinions and other material reflecting the policy making process. Its purpose is to assure that:

subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated and adopted. . . .

*Coastal States, supra*, 617 F.2d at 866. The ultimate goal is to prevent injury to the quality of agency decision. *National Labor Relations Board v. Sears, Roebuck and Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975).

 The EOUSA has relied heavily on Exemption 5 in connection with withholdings based on both the attorney work-product rule and the government's deliberative process privilege. Plaintiffs attack the application of the former largely on two grounds. First, plaintiffs assert that it is impossible to determine from the descriptions provided if the attorney's opinions were adopted as final opinions and are therefore part of some final analysis of agency performance or are instead true predecisional opinions. Plaintiffs' argument in this regard is ill-founded. It is settled that even if a document is a final opinion or is a recommendation which is eventually adopted as the basis for agency action, it retains its exempt status if it falls properly within the work-product privilege. *Federal Open Market Committee of the Federal Reserve v. Merill*, 443 U.S. 340, 360 n.23, 99 S.Ct. 2800, 2812 n.23, 61 L.Ed.2d 587 (1979), *Exxon Corp. v. Federal Trade Commission*, 476 F.Supp. 713, 724–726 (D.D.C.1979). Therefore, any argument to the effect that the attorney's opinions in question may have become the basis for final agency action is irrelevant for the purposes of the work-product privilege.

Second, plaintiffs assert with respect to a number of documents (specifically # 58, 61, 62, 65–68, 123, 134, 135, 136 and 142 withheld by EOUSA) that factual data exists which can and should be excised from the attorney's opinions and recommendations. However, defendant EOUSA fully and properly relies on Exemption 3 in conjunc-

tion with Rule 6(e) [7] as an alternative justification for withholding each of these documents, and in fact much of the alleged "factual material" is precisely that which was properly withheld under Exemption 3. Indeed, defendant EOUSA may have adopted a "shot-gun approach" to exemption claims by alleging Exemption 5 as to certain of these documents, but it should hardly be penalized for such an approach when another exemption properly claimed is fully applicable.

 The Civil Division has withheld eleven documents pursuant to the attorney work-product privilege yet has failed in the majority of cases to adequately describe this material under the standards set forth in *Vaughn v. Rosen, supra.* Documents 29, 31, 33, 34, 35, 36 and 37 are withheld on the basis that they are "handwritten notes" pertaining to the *Iglesias* suit. If these notes consist solely of factual or objective data, this material must be released, for such is not protected under the attorney work-product privilege. *Robbins Tire & Rubber Co. v. National Labor Relations Board,* 563 F.2d 724, 734–736 (5th Cir. 1977). There is no statement in the affidavit explaining what these notes contain, and furthermore there is no allegation that factual material is not segregable from the remainder of the document. As the Court noted in *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980), an agency cannot expect a district court to "assume the fundamental prerequisites which are its burden to establish." These documents must be released absent a more detailed justification for their withholding.

 The other branch of Exemption 5's protection of inter-agency memoranda is the deliberative process privilege. This privilege has been defined more narrowly by the courts than has the work-product privilege, and is specifically limited to opinions and/or recommendations made among agency personnel that are neither formally nor informally adopted by the agency itself. *Coastal States Gas Corp., supra,* 617 F.2d at

866–867. Purely factual material which can be excised from the document and is not "inextricably intertwined" in the deliberative process must be segregated and disclosed. *Ryan v. Department of Justice,* 617 F.2d 781, 790–791 (D.C.Cir.1980).

 With regard to the EOUSA, all documents (except # 119 which is properly withheld under Exemption 6) which are withheld pursuant to this branch of Exemption 5 consist of advisory opinions, recommendations, and deliberations of the United States Attorney and his assistants concerning various aspects of the Ven-Fuel investigation. Therefore, they are all work-product and need not rely on the deliberative process privilege for protection. The other defendants which have relied on Exemption 5 (the Criminal Division, the Tax Division and the IRS) have all, in varying degrees of specificity, described the withheld documents or portions thereof adequately to demonstrate that they have closely inspected them and have arrived at a reasonable basis for non-disclosure. While in some cases the descriptions are barely adequate and in others they are extremely detailed, each affidavit in its own right satisfactorily explains that the information withheld consists of attorney's recommendations or opinions with respect to the investigations which were conducted concerning the plaintiffs' activities, or alternatively contains inter/intra-agency communication which was of a deliberative pre-decisional nature. Since disclosure of this information would infringe upon the attorney's common law right to think and plan freely or alternatively impede the free and unrestrained flow of commentary within the government, it has been properly withheld.

 Plaintiffs contend that much of what has been withheld contains factual material which can be segregated from the exempt information and therefore disclosed. Although the documents withheld under Exemption 5 may contain factual material, there exists no automatic presumption that material which is factual is automatically

---

7. *See,* Section II(B)(3), *supra.*

disclosable. Disclosing facts which are interspersed in otherwise protected material may reveal the "deliberative process of summarization itself" by identifying the facts which were deemed relevant or significant to the investigative process. *Lead Industries v. Occupational Safety and Health Administration*, 610 F.2d 70, 85 (2d Cir. 1979). Thus, factual material which is intertwined with the deliberative process or the attorney's opinions is as fully protected as the material in which it is encompassed.

### E. Exemption 6, 5 U.S.C. § 552(b)(6).

Defendant EOUSA has asserted Exemption 6 in connection with one document, a fourteen page letter from United States Attorney John L. Briggs to the Office of Professional Responsibility, a nineteen page draft of that letter and two one page letters to the same office. Exemption 6 relieves from mandatory disclosure "personal and medical files, and similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Briggs' letter contains his response to certain allegations of misconduct levied against him by outside counsel, including his interpretation of the facts and circumstances of the alleged misconduct. EOUSA contends that the document is akin to that which would be contained in personal files, and alternatively it falls in the category of "similar files".

▮▮▮▮ The analysis under Exemption 6 involves a two prong approach. First, it must be determined if the document falls within the type of file which is protected by the exemption. Second, it must be established that a "clearly unwarranted invasion of privacy" would result if the information were disclosed. *See, Board of Trade of the City of Chicago v. Commodity Futures Trading Commission*, 627 F.2d 392 (D.C.Cir. 1980). In this case, it appears that the letter is of an intimate, personal nature as to qualify under the category of "similar"

files". The stringent requirement of the second prong (a "clearly unwarranted invasion") has been interpreted to tip the scales in favor of disclosure, *see, Getman v. National Labor Relations Board*, 450 F.2d 670, 674 (D.C.Cir.1971), and there is indeed a compelling argument for disclosure when a strong public interest favors the same.

An individual's own reflections on allegations of misconduct aimed at him by another are clearly of a highly confidential and personal nature such that only a compelling public interest in disclosure will outweigh the privacy interest at stake. In the instant case, plaintiffs have not made a showing that there exists a strong public interest (or *any* public interest) in disclosure of the letters at issue herein. After weighing the factors deemed by the Court of Appeals to be especially relevant to Exemption 6 claims,[8] the balance in this case lies in favor of affirming the agency's decision to withhold the documents.

### F. Exemption 7, 5 U.S.C. § 552(b)(7).

▮▮▮▮ Defendants EOUSA, the Criminal Division, the IRS and the Customs Service claim that many documents are protected from disclosure under Exemption 7, which states in pertinent part that an agency may exclude from mandatory disclosure:

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, ... (C) constitute an unwarranted invasion of privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source ....

The first inquiry common to all of the subsections of Exemption 7 is whether a record is both investigatory *and* compiled for law

---

**8.** These factors include, (1) the plaintiff's interest in disclosure, (2) the public interest in disclosure, (3) the degree of the invasion of personal privacy, and (4) the availability of any alternative means of obtaining the requested information. *See, Church of Scientology v. United States Department of the Army*, 611 F.2d 738, 746 (D.C.Cir.1979).

enforcement purposes. Plaintiffs allege with respect to the Customs Service that the documents being withheld have not been sufficiently connected with an investigatory law enforcement purpose. This contention is untenable. The Customs Service's main function is to conduct investigations which contribute to the enforcement of the Customs laws. As stated by the Court in *Church of Scientology v. United States Department of the Army*, 611 F.2d 738 (D.C.Cir.1979):

> [t]he term "law enforcement purpose" has been construed to require an examination of the agency itself to determine whether the agency may exercise a law enforcement function. An agency which has a clear law enforcement mandate . . . need only establish a rational nexus between enforcement of federal law and the document for which an exemption is claimed.

611 F.2d at 748 (citations omitted). Contrary to plaintiffs' assertion, there is no requirement that the records withheld under this exemption be compiled for the specific case which is pending under Exemption 7(A) (see discussion, *infra*) to be characterized as compiled for investigatory, law enforcement purposes. The Customs Service has established a rational nexus between the enforcement of federal law [9] and the withheld document, and this "nexus" is sufficient to satisfy the first prong of the test. Given that all the documents withheld are of an investigatory, law enforcement nature, the defendants must also satisfy the second prong of the test and demonstrate that disclosure would harm one of the protected interests as delineated in § 552(b)(7)(A)–(F).

### 1. 5 U.S.C. § 552(b)(7)(A).

■ Exemption 7(A), which protects information if the release thereof would interfere with pending law enforcement proceedings, has been invoked by the Customs Service in connection with seven docu-

ments. The first of these is an eleven page memorandum which contains information regarding the government's strategy and evidence to be used in the currently pending Tax Court proceeding in the Middle District of Florida. Release of this document would certainly "harm the government's case in court," [10] and it was therefore properly withheld. See, *National Labor Relations Board v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1977). Six other documents allegedly pertain to the civil proceeding currently taking place in the District Court in Massachusetts (Civil Action No. 80–3352). Plaintiffs have asserted, without offering any justification or evidence in support of this assertion, that these documents do not relate to the case pending in Massachusetts. In light of the agency's clear and unambiguous representations to the contrary, this form of conclusory rebuttal is insufficient to support the plaintiffs' request for *in camera* inspection of these documents. Summary judgment is appropriate with respect to all documents withheld under Exemption 7(A).

### 2. 5 U.S.C. § 552(b)(7)(C).

■ Exemption 7(C) has been widely asserted by the EOUSA and invoked in a limited manner by the Criminal Division and the IRS. This exemption, designed to prevent "unwarranted invasions of privacy", is similar in nature to Exemption 6 and also requires a balancing of the public interest in disclosure against the privacy interest at stake. *Lesar v. Department of Justice*, 636 F.2d 472 (D.C.Cir.1980). The standard for withholding is less exacting than that which exists under Exemption 6 (the word "clearly" is deleted), and therefore the plaintiffs must establish an even greater public interest in disclosure to obtain the withheld information.

■ With a few minor exceptions, the bulk of information withheld pursuant to

---

**9.** *See*, 19 U.S.C. § 1, *et seq.*

**10.** The legislative history indicates that this was the foremost consideration in enacting Ex-

emption 7. S.Rep.No. 813, 89th Cong., 1st Sess. (1965).

Exemption 7(C) appears to be of a nature the release of which would significantly impose upon legitimate privacy interests while only negligibly furthering any public interest in disclosure. The information withheld consists of names or other identifying data of witnesses, affiants, interviewees, persons under investigation or suspected of criminal activity and unidentified third parties. In this context, these individuals are arguably entitled to the highest degree of privacy, since the release of their names would connect them with various investigations that were being conducted concerning Ven-Fuel's activities.[11] *See, e. g., Librach v. Federal Bureau of Investigation*, 587 F.2d 372 (8th Cir.), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1978) (names of persons investigated by the FBI exempt from disclosure), *Scherer v. Kelley*, 584 F.2d 170 (7th Cir. 1978) (interviewees and informants in FBI investigations have superior privacy interest in their identity; release of this information would inhibit the third parties' willingness to cooperate with the government). This Court finds that the names of third parties who voluntarily provided law enforcement agencies with information concerning the investigation of Ven-Fuel are properly protected under Exemption 7(C). As the Court noted in *Lesar v. Department of Justice, supra*, "[t]hose cooperating with law enforcement should not now pay the price of full disclosure of personal detail," 636 F.2d at 488.

▆ Not included in the above category of protected persons are the government employees involved in the investigation and the individuals who inquired into the status of the investigation. Defendant EOUSA has withheld the names of federal, state and local government employees in documents # 6, 7, 9, 10, 16, 28, 105 and 133.

The policy reasons for withholding the names of third parties do not apply to government employees involved in the investigation since, (1) there can be no suspicion of wrongdoing on their part and (2) their continued cooperation is not at stake. In addition, there is a much stronger public interest in disclosing the names of the employees and agents who worked on the case since they may be able to provide valuable information in the context of a related civil suit. As this Court has previously held:

> [t]here is a legitimate public interest in knowing who ... conducted an investigation so those individuals can be subject to inquiry. The [government employees] should not be able to hide behind the FOIA in an effort to keep secret the ... investigatory process.

*Canadian Javelin v. Securities and Exchange Commission*, 501 F.Supp. 898, 904 (D.D.C.1980). These names must be disclosed. There is also no apparent reason why the names of those who inquired as to the status of the Ven-Fuel investigation should be protected. They certainly cannot be said to have had an expectation of secrecy (it was they who initiated the inquiry), and nothing in the Nellor affidavit suggests otherwise. Therefore, this information (contained in EOUSA documents # 3, 15 and 16) must also be disclosed.

### 3. 5 U.S.C. § 552(b)(7)(D).

▆ Exemption 7(D) has been invoked by the EOUSA with respect to nine documents and by the Customs Service with respect to five documents.[12] The exemption protects the identity of confidential sources and in certain circumstances the information obtained from these sources. *See, Lesar v. United States Department of*

---

11. The danger of revealing the names or identifying information of those innocent parties who appear in the records or files of law enforcement activity has been clearly recognized. In *Congressional News Syndicate v. United States Department of Justice*, 438 F.Supp. 538, 541 (D.D.C.1977), the court noted that:

> [t]he difference [between the standards in Exemption 6 and 7] is attributable to the inherent distinctions between investigatory

files and personal, medical or similar files. The name appearing in the latter raises no suspicion, but one who surfaces in the former may, without more, become the subject of rumor and innuendo.

12. The five documents withheld by Customs have all been properly withheld under Exemption 3 in conjunction with Rule 6(e) and therefore require no further dispensation.

*Justice, supra,* 636 F.2d at 488–492. The source's identity is protected under the exemption *only* when an express or implied promise of confidentiality has been provided. H.R.Cong.Rep.No.93–1380, 93d Cong., 2d Sess. 13 (1974), *Pope v. United States,* 599 F.2d 1383 (5th Cir. 1979). Confidentiality can be implied when the source would hardly have supplied the information unless it were confident that its identity would remain concealed. *Pope, supra,* 599 F.2d at 1386. However, this Court has recognized the inherent difficulty with inferring confidentiality from the surrounding circumstances, especially when the agency has not provided a sufficient factual basis upon which to rest such an inference. *Canadian Javelin, Ltd., supra,* at 903–904. The exemption also only protects the information obtained from the confidential source when it is obtained *only* from that source and it is compiled by a criminal law enforcement agency. *Nix v. United States,* 572 F.2d 998 (4th Cir. 1978).

 EOUSA documents 98–102, 108, 122 and 135 are withheld pursuant to Exemptions 7(D) and 7(C), document 107 is withheld exclusively under 7(D) and documents 47 and 48 are withheld under 7(D) or alternatively are outside the scope of the FOIA. Item 47 is a transcript of testimony from a state grand jury proceeding, and as a confidential record compiled by a law enforcement authority for law enforcement purposes, is properly withheld under Exemption 7(D).[13] Item 48 is a letter from the Jacksonville City Council President to two United States Senators, a copy of which was supplied to the United States Attorney's Office. Exemption 7(D) is misplaced in this instance because there is no allegation in the affidavit or indication from the record that a "confidential source" is at stake.[14]

 With respect to the documents that have been withheld under Exemptions 7(C)

and 7(D) as alternative grounds, the identities of the informants have already been determined to be protected under 7(C).[15] However, the *information* which they provided is not protected by 7(C) (except to the extent that it would disclose their identities), and may only be withheld if the elements of 7(D) are satisfied. Therefore, the agency must discharge its burden of establishing confidentiality (either express or implied) in the acquisition of this information.

It is impossible for this Court to draw a justified inference from the Nellor affidavit that the information was obtained from the third parties on an express or an implied understanding of confidentiality. Only two of the documents ( # 100 and 122) are described as containing information which was obtained pursuant to an understanding of confidentiality. The other descriptions do not even assert that the surrounding circumstances gave rise to an implied promise that the information would be held confidential. In *Miller v. Webster,* 483 F.Supp. 883 (N.D.Ill.1979), the defendants withheld the names of persons who were interviewed by the FBI on the basis that the persons "assumed confidentiality". The court found that the interviewees had not received any representations that what they disclosed would be kept confidential, and in addition the circumstances did not warrant implication to that effect. In the instant case, the interviews were made in connection with a criminal investigation which included a grand jury proceeding. These facts *alone* cannot support a finding of implicit confidentiality.

Aside from bridging these rather broad inferential gaps in the EOUSA affidavit with respect to the issue of confidentiality, the affidavit is also silent on the issue of whether the information was received *only* from the alleged confidential source. Because the affidavit forces the Court to speculate as to these important elements of

---

**13.** Confidential sources include state and local law enforcement agencies, *Lesar v. United States Department of Justice, supra,* 636 F.2d at 489 n.99.

**14.** Item 48 is, however, properly withheld as being outside the scope of the FOIA. *See,* discussion Section II(G), *infra.*

**15.** *See,* Section II (F)(2), *supra.*

Exemption 7(D), summary judgment is not appropriate with respect to the information which was procured from the interviewees (although their identities should be protected under 7(C)). The information contained in these documents must be disclosed unless the defendant submits to this Court a more detailed statement concerning their confidential nature.

### G. Documents Outside the Scope of the FOIA.

Defendant EOUSA has withheld ten documents [16] in whole or in part on the basis that they are not agency records and are therefore outside the scope of the FOIA. A document is subject to disclosure under a FOIA request only if it is an "agency record"—something which was either created by a Federal agency, or obtained *and* controlled by a Federal agency. *Goland v. Central Intelligence Agency*, 607 F.2d 339 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). It is clear that the defendant has in its possession the documents sought by plaintiffs. However, possession does not *ipso facto* mean control. In *Goland*, the Court adopted a balancing test to be used in determining if in fact the agency has control over the sought after documents:

> Whether a Congressionally generated document has become an agency record ... depends on whether under all the facts of the case, the document has passed from the control of Congress and become property subject to the free disposition of the agency with which the document resides.

607 F.2d at 347. In *Goland*, the document in question was found to have been released to the agency for internal purposes only and was therefore not disclosable under the FOIA. *See also, Warth v. Department of Justice*, 595 F.2d 521 (9th Cir. 1979) (trial transcript remains a court record even though in the possession of the agency, and is therefore exempt).

Documents 45 and 46 consist of material (subpoenaes, letters and teletype) which originated from within two House of Representatives subcommittees and apparently relates to the ultimate decision to conduct a grand jury investigation into the activities of plaintiff Ven-Fuel. Congress itself is outside the scope of the FOIA. 5 U.S.C. § 551(1)(A). The question with respect to these documents is whether Congress relinquished control over them sufficiently to remove them from the category of Congressional documents and include them in that of agency records. Under the *Goland* control test, we conclude that the letters and notes should be protected in the interests of promoting rather than discouraging communication between the agencies and the Congress. As the Court recognized in *Goland*

> [i]f [agency possession automatically implies agency control], Congress would be forced either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role. We decline to confront Congress with this dilemma.... We will not permit plaintiffs to do indirectly what they cannot do directly because of the fortuity of the [document's] location.

607 F.2d at 346.

Document 48 is a letter which was sent by the President of the Jacksonville City Council to two United States Senators. A copy of this letter was supplied to the United States Attorney's Office. The defendant cannot be said to have control over the letter sufficient to relinquish the obvious proprietary interest which the President of the City Council continues to have. In the interest of promoting communication and cooperation between state and federal government agencies, the *Goland* control test strikes a balance in favor of preserving the President's continued control over the document.

### III. CONCLUSION

This Court concludes that, aside from the minor exceptions noted above, the agency

---

**16.** This issue is moot with respect to seven of the ten documents in question—six have been properly withheld on the basis of Exemption 3 in conjunction with Rule 6(e) (# 49, 50, 51, 52, 53 and 97), and one has been properly withheld under Exemption 7(D) (# 47).

defendants have properly withheld those documents or portions thereof that were not released. Summary Judgment is granted in favor of the Central Intelligence Agency; Internal Revenue Service, Department of the Treasury; Bureau of Alcohol, Tobacco and Firearms; United States Secret Service; United States Customs Service; and the United States Department of Justice Tax Division, Office of the Deputy Attorney General and the Office of Legislative Affairs, on all counts. Summary Judgment is granted in favor of the Executive Office of the United States Attorneys; and the Criminal and Civil Divisions of the United States Department of Justice to the extent provided for in this Opinion.

An appropriate Order follows this Memorandum Opinion.

### ORDER

Upon consideration of the Memorandum Opinion entered this date, it is by the Court this 21st day of October, 1981,

ORDERED, that the Defendants' Motion for Summary Judgment be and is hereby GRANTED, with respect to:

1) All documents withheld pursuant to Exemptions 1, 3, 6 and 7(A) of the Freedom of Information Act, 5 U.S.C. § 552(b) 1, 3, 6 and 7(A);

2) All documents withheld pursuant to Exemption 5 of the Freedom of Information Act except Civil Division Documents # 29, 31, 33, 34, 35, 36 and 37;

3) All documents withheld pursuant to Exemption 7(C), except those portions of EOUSA Documents # 6, 7, 9, 10, 16, 28, 105 and 133 which contain the names (or other identifying information) of certain government employees and those portions of EOUSA Documents # 3, 15 and 16 which contain the names (or other identifying information) of certain individuals who inquired into the status of the Ven-Fuel investigation;

4) Documents # 100 and 122 withheld by the EOUSA under Exemption 7(D); and

5) Documents # 45, 46 and 48 withheld by the EOUSA as being outside the scope of the FOIA; and it is

FURTHER ORDERED, that Defendants' Motion for Summary Judgment be and is hereby DENIED with respect to:

1) Those documents excepted in above paragraphs (2) and (3) of this Order;

2) Documents # 2–43, 2–44 and 2–45 withheld by the Criminal Division pursuant to Exemption 4; and,

3) Documents # 98, 99, 101, 102, 108 and 135 (or portions thereof) withheld by the EOUSA pursuant to Exemption 7(D), excluding that information which identifies those persons who supplied this material; and it is

FURTHER ORDERED, that all documents or portions thereof to which Summary Judgment has been denied will be FORTHWITH disclosed unless defendants file with this Court within thirty (30) days from the date of this Order supplementary affidavits which provide the additional information and justifications deemed necessary by this Court as evidenced by the Memorandum Opinion filed herewith.