**HOLY SPIRIT ASSOCIATION FOR the UNIFICATION OF WORLD CHRISTIANITY, Appellant,**

v.

**FEDERAL BUREAU OF INVESTIGATION et al.**

No. 81–2349.

United States Court of Appeals, District of Columbia Circuit.

Argued May 18, 1982.

Decided July 23, 1982.

As Amended Aug. 3, 1982.

Dorothy Sellers, Washington, D. C., with whom Douglas Mishkin, Washington, D. C., was on the brief, for appellant.

Susan Sleater, Atty., Dept. of Justice, Washington, D. C., with whom Stanley S. Harris, U. S. Atty., Washington, D. C., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees. Kenneth M. Raisler and John Oliver Birch, Asst. U. S. Attys., Washington, D. C., entered appearances for appellees.

Before WRIGHT, MacKINNON and EDWARDS, Circuit Judges.

Opinion for the court PER CURIAM.

Concurring opinion filed by Circuit Judge MacKINNON.

PER CURIAM:

Exemption 7(C) of the Freedom of Information Act permits an agency to withhold "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would * * * constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (1976). In this case the Federal Bureau of Investigation invoked Exemption 7(C) to support its deletion of names, addresses, and other identifying information from documents it released to the Holy Spirit Association (Unification Church) pursuant to the church's FOIA request. The church filed suit in the United States District Court for the District of Columbia to compel disclosure of the remaining material. In its affidavit the FBI stated that it had conducted an investigation to determine whether the Unification Church had violated two federal statutes: the kidnaping provision, 18 U.S.C. § 1201 (1976), and the Foreign Agents Registration Act, 22 U.S.C. § 611 et seq. (1976). Joint Appendix (JA) 23–24. The FBI affidavit also contended that release of the identifying information would constitute an unwarranted invasion of personal privacy. JA 33–36.

The District Court found that the government's Exemption 7(C) claim was justified and granted summary judgment in the government's favor. JA 432–440. Subsequently the FBI located and processed an additional set of documents, from which it

deleted identifying material in reliance on Exemption 7(C). After reviewing affidavits from the FBI, the District Court granted summary judgment for the government with respect to these deletions. JA 602–608, 616.

█ We affirm the rulings of the District Court, generally for the reasons stated in its opinions. The court found that the documents in question were "investigatory records" within the meaning of Exemption 7; this finding of fact was not clearly erroneous. We also endorse the District Court's discussion of the information that the FBI should generally include in affidavits claiming the protection of Exemption 7:

> [T]he agent's affidavit does not spell out specifically when the investigations of the Unification Church began, how long they lasted and whether any persons were later indicted. This information may be necessary in some cases and should be routinely offered to the Court. * * *

JA 437. In this case, as the District Court explained, the imprecision of the FBI's affidavit, "[i]f indeed it is a procedural defect, * * * is not fatal * * *." Id. However, inclusion of more detailed information about the relevant investigations would facilitate an accurate determination of whether the documents in question are "investigatory records."

The judgments of the District Court are *Affirmed.*

MacKINNON, Circuit Judge (concurring).

The opinion by the court holds that the documents sought by appellants were exempt from disclosure under Exemption 7(C) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(C) (1976), and I concur in that opinion. It affirms the District Court on one reason given for its decision. I write additionally to point out that I believe the other reason given by the District Court for barring disclosure—Exemption 6—is also valid.

Communications of the sort in issue in this case, whether made directly to the agency or made to the citizen's representative in Congress and subsequently forward-

ed to the law enforcement agency—as were some of the letters here involved [1]—will frequently contain information of an intensely personal sort relating to that person's social, personal, financial, or, as in this case, family situation. In such cases, because the invasion of personal privacy resulting from disclosure would have serious consequences both for the individuals involved and for the general public, I believe that the information is exempted from disclosure both by Exemption 7(C) [2] where it is contained in a law enforcement record compiled for an investigatory purpose, *and* by Exemption 6 [3] where it is found in other agency records.

## I

The personal privacy protected by Exemptions 6 and 7(C) is implicated anytime revelation of the contents of information would "subject the person to whom they pertain to embarrassment, harassment, disgrace, loss of employment or friends." *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir. 1981). *See Department of the Air Force v. Rose*, 425 U.S. 352, 357, 96 S.Ct. 1592, 1597, 48 L.Ed.2d 11 (1976). Particularly significant privacy interests are involved where, as here, the information has come into the government's possession in the initiation or course of an investigation into possible violations of the law or generally because of its status as a law enforcement agency.

First, the action of those communicating with an agency like the FBI, whether directly or through their elected representatives, necessarily places them at risk of harassment by those who are the subjects of their communication. The law took account of this risk long before the advent of the Freedom of Information Act, in recognizing the so-called "informer's privilege" against disclosure of the identity of a confidential informant. *See Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). As with the FOIA exemptions, *see Chrysler Corporation v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (exemptions do not give private right of action to compel government to withhold information), the privilege against revelation belongs to the government, not the informer. *Roviaro v. United States*, 353 U.S. at 59, 77 S.Ct. at 627. Both, however, are directed at the protection of the private citizen's expectation that when he provides (usually voluntarily) information to the government he will not be damaged in his person or reputation by disclosure of the source. The public has a concomitant interest in avoiding such damage as would deter others from similar cooperation. *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977). Most law enforcement agencies place great reliance upon voluntary citizen assistance in solving crimes and apprehending law violators. "Those cooperating with law enforcement should not now pay the price of full disclosure of personal detail." *Lesar v. Department of Justice*, 636 F.2d 472, 488 (D.C.Cir. 1980) (quoting district court opinion, 455 F.Supp. 921, 925 (D.D.C.1978)).[4]

---

**1.** *See, e.g.*, documents 16, 24, 29, 32, 38, 43, 53, 58, 87, 90, 92.

**2.** Exemption 7(C), 5 U.S.C. § 552(b)(7)(C) (1976), provides for the exemption of "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy ..."

**3.** Exemption 6, 5 U.S.C. § 552(b)(6) (1976), provides for the exemption of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Exemption 6 applies broadly to "information which applies to a particular individual," that is, information

"personal to any particular individual." *United States Dep't of State v. Washington Post Co.*, —— U.S. ——, 102 S.Ct. 1957, 1961 & n.4, 72 L.Ed.2d 358 (1982).

**4.** *See also Holy Spirit Ass'n v. United States Dep't of State*, 526 F.Supp. 1022, 1033 (S.D.N.Y.1981) (discussing Exemption 6); *Iglesias v. CIA*, 525 F.Supp. 547, 563 (D.D.C.1981) (Exemption 7(C)); *Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 349 (S.D.N.Y.1981) (same); *Stauss v. IRS*, 516 F.Supp. 1218, 1221–22 (D.D.C.1981) (same); *cf. Pope v. United States*, 599 F.2d 1383 (5th Cir. 1979) (expectation of confidentiality by one who gives unsolicited information to law enforcement agency supports finding of implied assurance of confidentiality sufficient to invoke Exemption 7(D)).

Where a person's fear of reprisals from the subject of his communication is reasonable, on the basis either of demonstrated fact or of the inferences to be drawn from reasonable claims he makes, privacy interests support the application of both Exemption 6 and Exemption 7(C). A good example is furnished by *Church of Scientology v. Department of State*, 493 F.Supp. 418 (D.D.C. 1980). There, plaintiff sought disclosure from the FBI and Department of State of the identities of persons who "provided information and participated in the investigation of the Church of Scientology." *Id.* at 421. The court, invoking both exemptions, refused to order such disclosure, taking particular note of the fact that

> [p]laintiff has a practice of harassing its "suppressors." Some documents ... describe bizarre situations and harsh punishments involving disenchanted Scientologists.

*Id.* The letters here similarly describe "bizarre" and possibly illegal activities in which the writers suspect the Holy Spirit Association of being engaged. Even if such suspicions ultimately prove to be unfounded, it cannot be doubted that at the time they voiced them, those communicating with the authorities could reasonably have feared reprisals against themselves or their family members.[5]

In addition to the fear of harassment, the privacy interests of one who calls possible violations of law to the attention of enforcement authorities also comprehend the effect of the "stigma" sometimes attached to such cooperation with the authorities. As we recently observed in *Bast v. Department of Justice*, 665 F.2d 1251, 1254 (D.C. Cir.1981), "Exemption 7(C) recognizes the stigma potentially associated with law enforcement investigations," and thus counsels great deference to the privacy interests of those who communicate with law enforcement agencies in the course of an investigation.

## II

The foregoing considerations apply with equal vigor to those communications brought to the attention of law enforcement agencies by a member of Congress acting on behalf of his constituent. A number of documents sought in the present case were letters sent by citizens to their representatives calling attention either to suspected violations of federal law of varying generality[6] or to specific incidents involving the writer's own family members.[7] The latter documents in particular reveal intimate personal details concerning the behavior and personal relationships of the writers and their subjects. For example, Document 38 includes a letter from a constituent to Senator Hart stating that the correspondent, "terminally ill with cancer," has "a daughter, who 4 days after being released from a psychiatric hospital was taken by this cult and indoctrinated ..." J.A. at 160. Document 53 includes a letter from the mother of an adherent of the Unification Church to Congressman Forsythe stating that she believes her son to have been "brainwashed" and that "I saw my son, who had been sickly as a child, going without food for a whole week" at the behest of other adherents. J.A. at 348.

Such disclosures of personal information about oneself and one's family cannot be assumed to be intended by their authors for public consumption. While it may be true that many or even most communications to legislators do not implicate significant interests in personal privacy, *cf. Mobil Oil*

---

5. The latter concern is clearly present in the instant case, where several of the letters involved alleged that the writer's child had been kidnapped by or (as a result of "brainwashing") was living with members of the Holy Spirit Association. *See, e.g.,* J.A. at 142, 144, 160, 348.

6. *See, e.g.,* J.A. at 164 (alleging kidnapping); *id.* at 386 (same); *id.* at 409 (alleging that "Unification Church holds a contract for clean-

ing the FBI building in Washington" and noting security risk); *id.* at 420 (alleging unlawful lobbying of legislators).

7. *See, e.g.,* J.A. at 142 (document no. 24); *id.* at 160 (no. 38); *id.* at 343 (no. 53); *id.* at 365 (no. 58); *id.* at 420 (no. 92). *See also id.* at 415 (no. 90) (letter to FBI Director from Congressman Early).

*Corp. v. FTC*, 406 F.Supp. 305, 314 (S.D.N.Y.1976) (discussing Exemption 7(D)), communications urging investigation of a third party, or disclosing intimate personal details in the hope of prompting legislative action, certainly fall within the privacy concerns protected by Exemptions 6 and 7(C).[8]

Courts on several occasions have had cause to comment upon the expectation of privacy one has in calling to the attention of his elected representative possible violations of law. These courts have recognized that for one in particularly sensitive or desperate circumstances, an appeal to the resources of a legislator is often the last practical alternative. In such circumstances, the privacy interests implicated in the appeal may well be as weighty as, if not weightier than, those implicated by the informer-law enforcement agency communication.

In *Holy Spirit Association v. United States Department of State*, 526 F.Supp. 1022 (S.D.N.Y.1981), plaintiffs' FOIA request encompassed five documents in which "constituents are identified who wrote letters to their United States Senators about the Unification Church." *Id.* at 1034. The letters were, in fact, very closely similar in tone and purpose to those involved in the present suit, being directed at the treatment of Unification Church adherents and the status of that organization under United States laws. Applying Exemption *6*, the court held that

> The writers of these letters had some expectations of privacy, otherwise it is questionable that they would have confided their deep concern and their personal experiences and those of others to their senators; it is unlikely they assumed that their letters condemning the Unification Church would be made available to it with their names intact. The exposure of personal and unpleasant experiences, in some instances involving the alienation of their children, could embarrass the individuals named.[9]

In *Rural Housing Alliance v. Department of Agriculture*, 498 F.2d 73 (D.C.Cir.1974), this court reversed a district court judgment ordering disclosure of a Department of Agriculture report that included case studies revealing details about applicants for government housing loans. However, the district court in that case *had* held Exemption 6 applicable to the names of persons who had written their Congressmen

---

8. If, indeed, such documents are subject to the disclosure requirements of the FOIA in the first place. There is some question whether letters originally in the possession of Congress, copies of which are forwarded to administrative agency for consideration or investigation thereby, become "agency records" subject to disclosure, or instead remain within the control of Congress. *See, e.g., Iglesias v. CIA*, 525 F.Supp. 547, 565 (D.D.C.1981). *See generally Goland v. CIA*, 607 F.2d 339 (D.C.Cir.1978) (document not "agency record" where congressional intent to retain control is clear), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d.759 (1980). Since in this case the materials sought by appellant were in any event exempt from disclosure under FOIA exemptions 6 and 7(C), it is unnecessary to address the question of whether the letters to Congress here remained under congressional control; but I would not foreclose such a holding were the issue presented. *See id.* at 346.

9. *Compare Mobil Oil Corp. v. FTC*, 430 F.Supp. 849 (S.D.N.Y.1977), in which the court ordered disclosure of the names of those who wrote letters of complaint to the FTC where the letters themselves "indicated that copies had been sent to members of Congress..." *Id.* at 851. The complaints, concerning possible antitrust violations by major oil companies, had ultimately resulted in the commencement of proceedings by the FTC.

That case involved the assertion of Exemption *7(D)*, the exemption for information obtained under an assurance (either explicit or implicit) of confidentiality to the source. Exemptions 6 and 7(C), which are explicitly concerned with protecting against invasions of "*personal*" privacy, were not at issue—doubtless because the communications involved concerned the *economic* rather than the personal interests of their authors. Such cases are readily distinguished from the present one, in which the originator of the document has revealed intimate personal details rather than simply pursued his economic interests. *Cf. Retail Credit Corp. v. FTC*, [1976–1] Trade Cas. (CCH) ¶ 60,727, at 68,129 (D.D.C.1976) (complaints to agency and letters to Congressmen disclosed personal financial and other details).

to complain of discrimination in the awarding of loans. *Id.* at 76.[10]

### III

In the present case, the FBI *fully disclosed the content* of the communications directed to it and to legislators, withholding only the names and addresses of their authors. In these circumstances, it is difficult to imagine ordering disclosure in the face of either Exemption 7(C) or Exemption 6. While the government's burden under the latter exemption is somewhat heavier in view of the fact that the invasion of privacy asserted must be *"clearly"* unwarranted, *see Church of Scientology v. Department of State,* 493 F.Supp. 418, 421 (D.D.C.1980), both exemptions prohibit disclosure where the interest of the private party in nondisclosure is greater than the public's interest in disclosure. Even supposing that the plaintiff here has a significant and perfectly benign interest in learning the identities of the letter-writers in this case, only a greater *public* interest in disclosure can override the privacy rights of the communicants. *Ditlow v. Shultz,* 517 F.2d 166, 171–72 (D.C.Cir.1975).[11]

In the present case, the public's interest in disclosing the identity of those communicating to the FBI and to legislators is minimal if it exists at all, while the interests of both the public and the private parties involved counsel strongly against disclosure. *Holy Spirit Association v. United States Department of State, supra,* 526 F.Supp. at 1034. Where the only information withheld from the requester is the identity of the person making the disclosed complaint or request, the privacy balance should presumptively be struck in favor of nondisclosure. *Malizia v. United States Department of Justice, supra,* 519 F.Supp. at 349.

The district court was therefore correct, in my opinion, in applying both exemptions 7(C) and 6 to bar disclosure of the information at issue in this appeal.

---

**10.** The panel in *Rural Housing* ordered the case remanded for a determination of whether disclosure would constitute a "clearly unwarranted" invasion of personal privacy. One important factor in that determination under the court's ruling was "whether the individuals *expected* confidential treatment." *Id.* at 78 n.21 (emphasis added).

**11.** The balancing is thus different from that performed in the case of an assertion of the "informer's privilege" in a criminal case, where the defendant's interest in putting on his defense is required to be considered. *See Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *Suarez v. United States,* 582 F.2d 1007 (5th Cir. 1978).