## HOLY SPIRIT ASSOCIATION FOR the UNIFICATION OF WORLD CHRISTIANITY, INC., and Bruce A. Brown, Plaintiffs,

v.

## UNITED STATES DEPARTMENT OF STATE, Edmund Muskie, Secretary of State, Defendants.

### No. 80 Civ. 4204.

United States District Court,
S. D. New York.

Nov. 20, 1981.

---

Levy, Gutman, Goldberg & Kaplan, New York City, for plaintiffs; Jeremiah S. Gutman, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Jane E. Booth, Asst. U. S. Atty., New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, the Holy Spirit Association for the Unification of World Christianity, Inc. ("Unification Church") and Bruce A. Brown, its Director of Legal Affairs, petitioned the Department of State and the Central Intelligence Agency ("CIA") for disclosure of "[a]ny and all material" relating to the Unification Church, pursuant to the Freedom of Information Act ("FOIA").[1] In response, the Department of State and the CIA retrieved fifty-seven documents. The State Department initially released twenty-two of these documents in their entirety and twenty-eight in part, and withheld seven documents in full. Upon administrative appeal, additional material in four documents was released. Plaintiff then commenced this action to compel release of all the withheld material. In the course of

1. 5 U.S.C. § 552.

the litigation, the State Department released additional material, and it has now released twenty-eight documents in full. Thus, there remains at issue a total of twenty-nine documents of which twenty-five have been released with deletions and four withheld in their entirety. The defendants claim that this material is exempt from disclosure under one or more exceptions of the FOIA.[2]

Defendants now move for summary judgment on the basis of their *Vaughn v. Rosen*[3] index and their answer to plaintiff's Interrogatory 1, including the affidavits of Thomas W. Ainsworth, Acting Deputy Assistant Secretary for the Classification and Declassification Center of the Department of State. They urge that the specificity of references contained in all the foregoing establishes that an *in camera* inspection is not required. Plaintiff makes a cross-motion for summary judgment and, in the alternative, requests that the Court conduct an *in camera* inspection of the withheld material with the participation of counsel.

The FOIA requires the Court to make a *de novo* determination of whether or not the defendants are justified in withholding their records and to order the production of any agency records that have been improperly withheld from the complainant.[4] The FOIA places the burden on the agency to sustain its action, and if its affidavits and actions do not meet its burden, the Court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions."[5] This Court has not hesitated to conduct a detailed *in camera* inspection of agency records where the agency failed to make an appropriate showing for exemption.[6] *In camera* inspection under the FOIA is not automatic, however,[7] and is not required where the agency has submitted affidavits that describe with reasonable specificity the nature of the documents at issue and the claimed justification for nondisclosure, and that indicate the requested material logically falls within the claimed exemption.[8] There is need for a restrained exercise of discretion with respect to *in camera* inspection where the government's affidavits and actions make a "plausible" case for exemption.[9]

> It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an in camera examination to look for segregable non-exempt matter . . . Where it is clear from the record that an agency has not exempted whole documents merely because they contained some exempt material, it is unnecessary and often unwise to undertake such an examination.[10]

2. 5 U.S.C. § 552(b)(1), (3), (5) & (6).

3. 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

4. 5 U.S.C. § 552(a)(4)(B).

5. *Id.*

6. *See Lamont v. Dep't of Justice*, 475 F.Supp. 761 (S.D.N.Y.1979).

7. *Brown v. FBI*, 658 F.2d 71, 74 (2d Cir. 1981); *Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70, 87 (2d Cir. 1979) (quoting *EPA v. Mink*, 410 U.S. 73, 93, 93 S.Ct. 827, 839, 35 L.Ed.2d 119 (1973) and H.R.Rep.No.93–1380, Conf.Rep., 93d Cong., 2d Sess., 9 (1974): the FOIA "merely 'permit[s] such *in camera* examination at discretion of the court' "); *Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 342 (S.D.N.Y.1981); *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 768 (S.D.N.Y.1979).

8. *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 481 (D.C.Cir.1980); *see EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 342 (S.D.N.Y.1981).

9. *Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70, 87 (2d Cir. 1979) (citing *Weissman v. CIA*, 565 F.2d 692, 696–98 (D.C.Cir.1977)).

10. *Brown v. FBI*, 658 F.2d 71, 74 (2d Cir. 1981); *Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70, 88 (2d Cir. 1979) (quoting *Weissman v. CIA*, 565 F.2d 692, 698 (D.C.Cir.1977)); *see Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 342 (S.D.N.Y.1981); *Sterling Drug Inc. v. Harris*, 488 F.Supp. 1019, 1025 (S.D.N.Y.1980).

The Court has conducted a line-by-line review of the released documents as redacted, the government's *Vaughn* affidavit and its answer to plaintiff's Interrogatory 1. The justification for each claimed exemption is set forth in the Ainsworth affidavits. Upon an analysis of all the foregoing, the Court finds that defendants have sustained their burden of proof as to the claimed exemptions; there is no need for an *in camera* inspection and, accordingly, the defendants' motion for summary judgment is granted. We consider the exemption claims under their respective categories.

EXEMPTION 1

Defendants claim that material in 14 documents,[11] is withheld under Exemption 1. That Exemption requires the government to establish that the withheld matters are:

> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.[12]

The documents at issue are currently classified under Executive Order ("E.O.") 12065,[13] which authorizes nondisclosure of matters that meet procedural and two substantive criteria for classification.

Procedural requirements for the documents at issue are described by section 1–606 of the Executive Order.[14] The section applies to documents originating prior to the effective date of the Executive Order, December 1, 1978, as is true of all of these documents. It requires that classification under the Executive Order be authorized by a Top Secret classification authority and that this authority be exercised personally, on a document-by-document basis. Both of these requirements have been met with regard to each of these documents.[15] The section also requires that classification of the documents be "consistent with this [Executive] Order." Accordingly, all the documents were classified according to the designations in the Executive Order; all are classified "confidential" except one [16] that is classified "secret." [17]

11. Documents 2, 25, 26, 27, 33, 34, 36, 39, 40, 41, 44 & CIA Documents 2, 7 & 8. All document numbers refer to the numbering of the documents in the *Vaughn* index. Material in four of these documents have been deleted under other exemptions, also. Reference to documents or deleted matters in the discussion of each exemption is limited to material withheld under that exemption.

12. 5 U.S.C. § 552(b)(1).

13. 3 C.F.R. § 190. Where, as here, the documents were classified under a prior executive order, in reviewing *de novo* the classification of the documents, the Court refers to the executive order under which the documents are currently classified, in this case, E.O. 12065. *See Baez v. United States Dep't of Justice*, 647 F.2d 1328, 1333–34 (D.C.Cir.1980); *Allen v. CIA*, 636 F.2d 1287, 1292 n.25 (D.C.Cir.1980); *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 480 (D.C.Cir.1980) ("The general principle ... is that a reviewing court should assess classification under the Executive Order in force at the time the responsible official finally acts" (emphasis omitted)); *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 769–70 (S.D.N.Y.1979).

14. Section 1–606 provides, in pertinent part: Documents originated before the effective date of this Order and subject to a request [for the documents under the FOIA] may not be classified unless such classification is consistent with this Order and is authorized by the senior official designated to oversee the agency information security program or by an official with Top Secret classification authority. Classification authority under this provision shall be exercised personally, on a document-by-document basis.

15. *See* Defendants' Answer to Interrogatory 1. Classification of each document was personally authorized by Deputy Assistant Secretary of State Clayton E. McManaway, who has Top Secret classification authority. *See id.* at Document 2(1) and answer (e) with respect to each document.

16. CIA Document 2.

17. Sections 1–102 to 1–104 of E.O. 12065 state the three classification standards: "Confidential," "Secret" and "Top Secret." Information is "Confidential" if its unauthorized disclosure reasonably could be expected to cause identifiable damage to the national security. Information is "Secret" if its unauthorized disclosure reasonably could be expected to cause serious damage to the national security. Information is "Top Secret" if its disclosure reasonably could be expected to cause exceptionally grave damage to the national security.

Section 1–501 of the Executive Order requires the documents to be marked with "the identity of the original classification authority," the office of origin and the date or event for declassification or review and to be stamped with the proper classification designation. Each of the redacted documents at issue displays the appropriate classification designation, office of origin,[18] and date or event for declassification.[19] The original classification determinations under the Executive Order were made by Deputy Assistant Secretary of State Clayton E. McManaway. While the documents do not identify McManaway himself, they do identify reviewing officers who made recommendations to McManaway or who reviewed the documents after McManaway's determinations and confirmed them.[20] Requiring officials involved in the classification process to be named promotes agency accountability by removing the shield of anonymity. The Court finds that this purpose has been adequately fulfilled by naming an officer involved in the original classification process, and, accordingly, that all the redacted documents satisfy this and the other marking requirements of section 1–501 of the Executive Order.

In addition to the redacted documents, one CIA document has been withheld in its entirety.[21] On the basis of its review of the redacted documents and defendants' Answer to Interrogatory 1 and its finding that the redacted documents bear the required markings, the Court is satisfied that the defendants complied with these requirements with respect to this CIA document. Accordingly, the Court finds that this last document also complies with section 1–501.

Executive Order 12065 also provides special procedures for documents that are classified for more than six years from the date of original classification.[22] Ten of the documents are scheduled for declassification less than six years from the date of original classification under E.O. 12065 and are not subject to these special procedures.[23] Four of the documents are classified for more than six years, and these comply with the special procedural requirements for such documents.[24] Thus, all fourteen documents comply with this and the other procedural criteria of E.O. 12065.

18. Under the regulations implementing E.O. 12065, the requirement is met if the document shows the date and office of origin of the document, as opposed to the office of origin of the classification. 32 C.F.R. § 2001.7(b). With the exception of CIA Document 2, each of these documents is a telegram that states its date and office of origin. CIA Document 2 is a memorandum to files. The date and agency in which classification was authorized under E.O. 12065 are marked on that document.

19. Four of the documents have a date for declassification or review typed or printed on them. Documents 2, 40, 44 and CIA Document 2. Each of the other redacted documents are telegrams that show "the date or event for declassification" by the designation "E.O. 11652: GDS." These documents were originally classified pursuant to E.O. 11652, the predecessor of E.O. 12065. "GDS" means "General Declassification Schedule," which, under E.O. 11652, indicated declassification six full calendar years following the year in which the classification originated. *See* Defendants' Answer to Interrogatory 1 at Document 9(c). Under the implementing regulations of E.O. 12065, the use of this sort of abbreviation on a classified telegram satisfies the marking requirement. *See* 32 C.F.R. § 2001.9.

20. *See* Defendants' Answer to Interrogatory 1 at answer (e) with respect to each document.

21. CIA Document 8.

22. E.O. 12065 §§ 1–4, 1–502.

23. Documents 25, 26, 27, 33, 34, 36, 39, 41 and CIA Documents 7 & 8. All these documents are marked "E.O. 11652: GDS," indicating declassification six years after classification under E.O. 11652, which is less than six years after original classification under E.O. 12065. *See* note (19) *supra.*

24. Documents 2, 40, 44 and CIA Document 2. Authorization to classify the documents for over six years was made by an official with Top Secret classification authority and a declassification date set, as required by E.O. 12065 § 1–402. The identity of this official and a reference to department regulations that state the reason for the prolonged classification—for example, "RDS-3"—are marked on the document, as required by § 1–502. "RDS" stands for "Review for Declassification Schedule" and "3" refers to the reason for prolonged classification.

These documents also comply with its two substantive criteria. Under the first requirement, the withheld information must concern one of the categories related to national security specified in the Executive Order.[25] Under the second requirement, an original classification authority must determine that "its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security." [26] In the course of preparing the *Vaughn* index, the documents were reviewed by the Acting Deputy Assistant Secretary of State responsible for all classification and declassification matters in the Department.[27] He set up two categories in the *Vaughn* index to correspond to two categories specified in the Executive Order relating to national security, to wit, "foreign government information" and "foreign relations or foreign activities of the United States." [28] He determined that ten of the fourteen documents[29] meet the classification requirements as information "concerning the foreign relations or the foreign activities of the United States." [30] He also determined that the information was such that "disclosure ... would cause identifiable damage" to the national security.[31] The reviewing officer also found that five of the documents[32] were properly classified as information received in confidence from a foreign government official.[33] Unauthorized disclosure of such information is presumed under the Executive Order to cause at least identifiable damage to the national security.[34] Thus, the officer determined that the documents concern one of the national security categories of the Executive Order and that disclosure could cause identifiable damage to the national security. In answering plaintiff's Interrogatory 1 on June 17, 1981, the same officer found that the documents continue to meet the prescribed classification criteria.[35] These documents are classified in accordance with the substantive as well as the procedural criteria for classification under E.O. 12065, and, therefore, the requirements of part (A) of Exemption 1 have been met.

The second requirement of Exemption 1 is that the matters "are in fact properly classified pursuant to such Executive Order." [36] In making its *de novo* determination of whether withheld matter does in fact conform to the criteria of the Executive Order, the Court is to "accord substantial weight to an agency's affidavit," [37] and

25. E.O. 12065 § 1–301 provides, *inter alia*, that the following are classifiable:

(a) military plans, weapons, or operations;
(b) foreign government information;
(c) intelligence activities, sources or methods;
(d) foreign relations or foreign activities of the United States.

26. E.O. 12065 § 1–302 states:

Even though information is determined to concern one or more of the criteria in Section 1–301, it may not be classified unless an original classification authority also determines that its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security.

27. *Vaughn* index ¶ 1; Defendants' Answer to Interrogatory 1 at answer (e).

28. E.O. 12065 § 1–301(b) & (d).

29. Documents 2, 25, 26, 27, 33, 36, 40 and CIA Documents 2, 7 & 8.

30. *Vaughn* index ¶ 6, Category A.

31. *Id.* The *Vaughn* index defines the "foreign relations" category to include only documents "the disclosure of which would cause identifiable damage." Thus, the determination made that these documents fall within that category necessarily includes a finding that disclosure would cause identifiable damage.

32. Documents 33, 34, 39, 41 & 44. Document 33 is classified under both categories.

33. *Vaughn* index ¶ 6, Category B.

34. E.O. 12065 § 1–303; *see Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 343 & n. 25 (S.D.N.Y.1981) (citing *Snepp v. United States*, 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980), continued availability of foreign sources depends on agency's ability to guarantee security of information).

35. *See* Defendants' Answer to Interrogatory 1 at answers (e) & (f); E.O. 12065 § 3–302.

36. 5 U.S.C. § 552(b)(1)(B).

37. Sen.Conf.Rep.No.93–1200, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. &

the test is whether the affidavit by its description sufficiently demonstrates that the contested document logically falls within the category of the exemption indicated.[38] The government claims that the documents are properly classified either because the deleted material describes the Unification Church's alleged involvement in various countries, or because it identifies foreign sources of information or the information itself. All the redacted documents, except two,[39] report some aspect of the Unification Church's alleged involvement in various countries, such as Japan and the Republic of South Korea. For example, affidavits indicate that withheld information concerns our Embassy's assessments of Korean government actions against certain business leaders and the alleged relationship between prominent political figures in Korea and the Unification Church, the disclosure of which could have an adverse impact on our Embassy's relationships with Korean officials and key political figures. The Church's connections with governments and civic leaders in various countries appear to be a very sensitive issue; for instance, several of the documents report "allegations" and criticism of government ties with the Church, as well as government denials.[40] Given the sensitivity of this issue, and giving substantial weight to the expertise and policymaking authority of the State Department, it is evident that the release of certain confidential information that describes the ties between the Unification Church and certain countries could damage United States' foreign relations and national security.[41] For the same reasons, and even without the presumption of identifiable damage to national security accorded to foreign government information,[42] the Court concurs with the Department's determination that the release of information from confidential foreign governments or other foreign sources about the Unification Church could damage United States' foreign relations and national security.

■ The Court finds it unnecessary to conduct an *in camera* inspection of the documents. It has carefully reviewed the *Vaughn* index and the redacted documents and finds that together they make far more than the requisite "plausible" case for exemption.[43] All the documents touch on the issue of the Unification Church's involvement in various countries. Further, the size and context of the deletions substantiate the government's claims as to their content. The largest deletions are limited to single paragraphs and, while it is possible that these paragraphs include some bits of non-exempt material, the Court finds that the Department has not made claims that are so vague or sweeping or suggestive of bad faith that *in camera* review to look for segregable non-exempt matter would be justified.[44] One document,[45] a two-page

Ad.News 6267, 6290; *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 481 (D.C.Cir. 1980); *Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 342 n.13 (S.D.N.Y.1981).

38. *Bell v. United States*, 563 F.2d 484, 487 (1st Cir. 1977); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C.Cir.1977) (relied on in *Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70, 87–88 (2d Cir. 1979)); *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 771 (S.D.N.Y.1979).

39. These two documents are discussed separately below.

40. *See, e. g.*, Documents 33, 36, 41 and CIA Document 7; *Vaughn* index, Documents 25 & 27.

41. *See Ferri v. Bell*, 645 F.2d 1213, 1221 (3d Cir. 1981) (drafters of FOIA intended courts to pay special deference to agency's findings in cases involving classified security documents to which Exemption 1 applies, citing Sen.Conf. Rep.No.93–1200, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 6285, 6290; *Bell v. United States*, 563 F.2d 484, 487 (1st Cir. 1977)); *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 770 (S.D.N.Y.1979).

42. E.O. 12065 § 1–303.

43. *Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70, 87 (2d Cir. 1979) (citing *Weissman v. CIA*, 565 F.2d 692, 696–98 (D.C.Cir.1977) ("*in camera* proceedings are particularly a last resort in 'national security' situations," 565 F.2d at 697)).

44. *See Brown v. FBI*, 658 F.2d 71, 74 (2d Cir. 1981); *Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70, 88 (2d Cir. 1979); *Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 342 (S.D.N.Y.1981).

45. CIA Document 8.

telegram, has been withheld in its entirety. The Department appears to have carefully limited withheld material, both from the limited number and size of the deletions in the redacted documents and by its release during the course of this litigation of additional material that it found to be non-exempt. In the instance of each document, the review for classification under E.O. 12065 was made by at least five different officers of the State Department, including the Director of the Office of Mandatory Review in the Classification and Declassification Center, the Appeals Review Panel, and the Deputy Assistant Secretary of State for Classification and Declassification. They concluded that classification of the withheld material in each document was appropriate and that its release could reasonably be expected to cause at least identifiable damage to the national security. While of course the Court must, under the statute, make a *de novo* determination of whether classification is justified, the five-fold administrative review suggests that the State Department's final determination as to all the documents was the result of painstaking and conscientious effort. The Court finds that *in camera* inspection of the wholly-withheld document to look for segregable non-exempt matter or to substantiate the Department's veracity is unnecessary.

Two documents constitute exceptions to the above analysis because neither makes any reference to the Unification Church.[46] The *Vaughn* index classifies the deleted information in document 36 as concerning United States' foreign relations, and it explains that disclosure could affect our Embassy's contacts with the Korean government because it describes the Embassy's views of a Korean National Assemblyman's actions. Unlike the other documents, however, the *Vaughn* index states that these matters do not relate to the Unification Church. Therefore, the material falls both within the national security exemption and outside the scope of plaintiff's request. After reviewing this four-page document, the Court finds from its location and context that the single-deleted paragraph is consistent with the government's characterization of it. The *Vaughn* index indicates that the withheld information in Document 44 identifies a confidential foreign government source. The disclosure of such information could damage the Department's ability to gather information and impair diplomatic relations.[47] The deleted portions, in relationship to the disclosed portions, leave no room to doubt that they identify sources of information and substantiate the defendants' claim of exemption to protect sources of information. Accordingly, summary judgment is granted to defendants as to all the material deleted pursuant to Exemption 1 in the fourteen documents.[48]

## EXEMPTION 3

Defendants claim that withheld material in ten documents comes within Exemption 3.[49] That Exemption applies to information

> specifically exempted from disclosure by statute . . ., provided that such statute

46. Documents 36 & 44.

47. *See* E.O. 12065 § 1–303; *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 770 (S.D.N.Y.1979).

48. The deleted portion of Document 40 is withheld pursuant to Exemption 5 as well as Exemption 1. Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Court finds that the withheld material in Document 40 is part of the State Department's predecisional deliberative materials and, therefore, qualifies for exemption under Exemption 5 as well as Exemption 1. *See Federal Reserve System v. Merrill*, 443 U.S. 340, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979); *Renegotiation Board v. Grumman Aircraft Corp.*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70 (2d Cir. 1979).

49. Documents 17, 18, 48, 49 and CIA Documents 1, 3, 5, 6, 7 & 8.

(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.[50]

The application of the Exemption depends on the existence of a relevant statute and on whether the withheld material falls within the statute's coverage. The government relies on two statutes: section 222(f) of the Immigration and Nationality Act,[51] which applies to the issuance and denial of visas; and 50 U.S.C., section 403g, which applies to the disclosure of certain internal organizational data about the CIA.

Both of these sections qualify as exempting statutes under Exemption 3(A) for statutes that require matters to be withheld from the public.[52] Section 222(f) provides, in pertinent part, that

> The records of the Department of State ... pertaining to the issuance or refusal of visas ... shall be considered confidential ....

50 U.S.C., section 403g provides, in relevant part, that

> [T]he [Central Intelligence] Agency shall be exempted from the provisions of ... any other law which requires the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency....

Having found that these two statutes are exempting statutes, the Court must determine whether or not the disputed material falls within those statutes and is therefore properly withheld by the State Department. With regard to section 222(f), three documents are withheld in their entirety[53] and one is withheld in part.[54] The *Vaughn* index states that all four documents are covered by the statute. It describes the withheld information as pertaining to visa records of the Reverend Moon. While this description is general, "visa records" is not the sort of vague and potentially sweeping category, such as "national security" document, that has plagued courts in other cases.[55] Accordingly, the probability that the Department would erroneously classify documents as visa records and the concomitant need for the Court to guard against such errors is reduced. Further, there is no basis to question the veracity of the defendants in classifying the withheld material as visa records. On the contrary, the inclusion of any more specific information might have violated the mandate of confidentiality of section 222(f). Moreover, the classification is substantiated by the documents themselves. Each is described as a one- or two-page telegram from the American Embassy in Seoul or from the State Department. The disclosed portion of the document released in part is consistent with the classification. In addition, the classification is consistent with surrounding events; other redacted documents refer to the controversy surrounding the issuance of visas to Reverend Moon and other members of the Unification Church. Summary judgment as to these four documents thus is granted.

The government claims that certain deleted material in six documents falls within exempting statute 50 U.S.C., section 403g.[56] Section 403g is a limited provision, specifically directed at any statutes that would otherwise require the CIA to divulge

**50.** 5 U.S.C. § 552(b)(3).

**51.** 8 U.S.C. § 1202(f).

**52.** *E. g., Halperin v. CIA*, 629 F.2d 144, 147 (D.C.Cir.1980) (50 U.S.C. § 403g); *Comm'n on Law Enforcement and Social Justice v. CIA*, 576 F.2d 1373, 1376 (9th Cir. 1978) (§ 403g); *Weissman v. CIA*, 565 F.2d 692, 694 (D.C.Cir. 1977) (§ 403g); *Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 346 (S.D.N.Y.1981) (§ 403g); *Church of Scientology of Cal. v. Dep't of State*, 493 F.Supp. 418, 423 (D.D.C.1980) (8 U.S.C. § 1202(f)); *Ferry v. CIA*, 458 F.Supp. 664, 666 (S.D.N.Y.1978) (§ 403g).

**53.** Documents 17, 18 & 49.

**54.** Document 48.

**55.** *See, e. g., Halperin v. Dep't of State*, 565 F.2d 699 (D.C.Cir.1977).

**56.** CIA Documents 1, 3, 5, 6, 7 & 8.

information about its internal structure.[57] The *Vaughn* index indicates that the withheld material in the five redacted documents [58] falls within section 403g because it consists of CIA organizational markings. Review of these documents substantiates the claim: three documents [59] consist of standardized forms, and the deletions pursuant to Exemption 3 are limited to spaces at the top of the first page of the form used to identify the relevant file and similar internal data. The size and location of the deletions made pursuant to this Exemption on the two other redacted documents support the claimed exemption, also. The Court finds that the material withheld under this Exemption in the redacted documents is exempt from mandatory disclosure and that *in camera* inspection is not required to make this determination.[60] It is unnecessary to consider Exemption 3 as to CIA Document 8 since the Court has granted summary judgment as to it under Exemption 1.

EXEMPTION 6

The government withheld material in eleven documents [61] pursuant to Exemption 6, which protects from disclosure

> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.[62]

The documents consist of internal State Department and CIA correspondence, letters to United States Senators from constituents that were referred to the State Department with cover letters from the Senators, and a return letter from the State Department to a U.S. Senator. The Court is satisfied, based on the *Vaughn* index and an examination of the redacted documents, that the only information being withheld under this Exemption are names, addresses and other information that would identify individuals named in the documents. Here, as elsewhere, the reasonable specificity of the government's affidavits connotes a quality of reliability that is substantiated by a review of the documents themselves. As already noted, under Exemption 6, to grant summary judgment to the defendants, the Court must find that (1) the deleted information is contained in "personnel," "medical," or "similar" files, and (2) disclosure would constitute a "clearly unwarranted invasion of personal privacy." [63]

Defendants claim that the documents are "similar" files within the meaning of the Exemption. A document is part of a "similar" file if its disclosure implicates privacy interests similar to the interests implicated by the disclosure of personnel or medical files.[64] This Exemption is meant to protect substantial privacy interests that touch on intimate details of a person's life,[65] and the "similar" files language must be interpreted broadly to include a wide range of information of a personal quality.[66]

**57.** *Phillippi v. CIA*, 546 F.2d 1009, 1015 n. 14 (D.C.Cir.1976) (citing S.Rep.No. .106, 81st Cong., 1st Sess., 4 (1949); H.R.Rep.No. 160, 81st Cong., 1st Sess., 5 (1949)).

**58.** CIA Documents 1, 3, 5, 6 & 7.

**59.** CIA Documents 5, 6 & 7.

**60.** These materials are also exempt under Exemption 2, which shields from the FOIA's disclosure requirements information pertaining solely to "the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2); *see Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 344 (S.D.N.Y.1981).

**61.** Documents 2, 11, 15, 16, 21, 23, 35, 39 and CIA Documents 1 & 3.

**62.** 5 U.S.C. § 552(b)(6).

**63.** *Brown v. FBI*, 658 F.2d 71, 74 (2d Cir. 1981); *Wine Hobby USA, Inc. v. United States IRS*, 502 F.2d 133, 135 (3d Cir. 1974); *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 781 (S.D.N.Y. 1979).

**64.** *Dep't of the Air Force v. Rose*, 425 U.S. 352, 376, 96 S.Ct. 1592, 1606, 48 L.Ed.2d 11 (1976); *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 781 (S.D.N.Y.1979).

**65.** *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir. 1981) (citing *Board of Trade of Chicago v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 398, 399 (D.C.Cir.1980)).

**66.** *Wine Hobby USA, Inc. v. United States IRS*, 502 F.2d 133, 135 (3d Cir. 1974) (relied on in *Dep't of Air Force v. Rose*, 425 U.S. 352, 376–77, 96 S.Ct. 1592, 1606, 48 L.Ed.2d 11 (1976);

The Court finds that the State Department and CIA records at issue containing names and identifying information of private citizens and other individuals are "similar" files that Congress intended to protect. It is well established that in the proper circumstances the disclosure of the identity of third persons in government files would invade substantial privacy interests justifying protection under Exemption 6.[67] The circumstances in which individuals are identified here are the sort that implicate substantial privacy interests since disclosure could expose the individuals to lifelong embarrassment, humiliation or disgrace, as well as to other practical disabilities, and, therefore, the records are "similar" files within the meaning of the Exemption.[68] Four documents identify individuals who provided the State Department or U.S. embassies with information.[69] These individuals' role as government informant could itself prove embarrassing to them.[70] In two of the three documents, the informants are foreign residents, including a foreign government official.[71] Disclosure of these individuals could subject them to harassment or disgrace or even to the prospect of harm or injury.[72] Consequently, the disclosure of the individuals would constitute a "clear invasion of privacy." [73] One of these three documents also includes the name of a private citizen who reportedly obtained a foreign visa through false statements.[74] Clearly, disclosure could embarrass the individual. This sort of derogatory and seemingly unverified information about an individual found within the files of an intelligence gathering agency is also a "similar" file under Exemption 6.[75] So, too, a fifth document identifies an individual who is "rumored" to have been a member of the Unification Church and a political lobbyist for it, although the government has been "unable to confirm this." [76] This is another unsubstantiated allegation that, given the controversy surrounding the Church, might cause embarrassment to the named individual. Consequently, it also falls within the scope of "similar" files. In five other docu-

*Rural Housing Alliance v. United States Dep't of Agriculture*, 498 F.2d 73, 77 (D.C.Cir.1974); *Malizia v. United States Dep't of Justice*, 519 F.Supp. 338, 347 (S.D.N.Y.1981); *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 781 (S.D.N.Y. 1979).

67. *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 375, 96 S.Ct. 1592, 1605, 48 L.Ed.2d 11 (1976) (quoting 120 Cong.Rec. 17018 (1974): "For example, deletion of names and identifying characteristics of individuals would in some cases serve the underlying purpose of exemption 6. . . ."); *see, e. g., Simpson v. Vance*, 648 F.2d 10, 17 (D.C.Cir.1980) (names of spouses of federal employees in the field of foreign relations listed in State Department publication); *Wine Hobby USA, Inc. v. United States IRS*, 502 F.2d 133, 135 (3d Cir. 1974) (names and addresses of certain persons filing with Bureau of Alcohol, Tobacco and Firearms); *Diamond v. FBI*, No. 79–3770 (S.D.N.Y. Aug. 5, 1981) (name of private citizen on his letter to State Department concerning his contacts with Soviet professors); *Church of Scientology of Cal. v. Dep't of State*, 493 F.Supp. 418, 421 (D.D.C. 1980) (names of persons who provided information of private citizens and government employees in FBI records compiled during internal security investigations in 1950s); *Ferry v. CIA*, 458 F.Supp. 664, 666–67 (S.D.N.Y.1978) (intelligence sources).

68. *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 377, 96 S.Ct. 1592, 1606, 48 L.Ed.2d 11 (1976).

69. Documents 2, 11, 39 and CIA Document 3.

70. *See Lamont v. Dep't of Justice*, 475 F.Supp. 761, 777 (S.D.N.Y.1979).

71. *See Vaughn* index and redacted Documents 2 & 39.

72. *See id.* Courts have found that the mere mention of an individual as being the subject of CIA files could be damaging to that person's reputation. *See, e. g., Cerveny v. CIA*, 445 F.Supp. 772, 776 (D.Colo.1978).

73. *Ferry v. CIA*, 458 F.Supp. 664, 667 (S.D.N.Y. 1978); *see Church of Scientology of Cal. v. Dep't of State*, 493 F.Supp. 418, 421 (D.D.C. 1980); *Lamont v. Dep't of Justice*, 475 F.Supp. 761 (1979).

74. Document 39.

75. *See Cerveny v. CIA*, 445 F.Supp. 772, 776 (D.Colo.1978).

76. Document 15.

ments,[77] constituents are identified who wrote letters to their United States Senators about the Unification Church. One document refers to a letter asking pointed questions about the Church's tax-exempt status and connections with the Korean government and senior U.S. government officials. The other letters openly condemn the Church and some recount personal experiences with it.[78] The writers of these letters had some expectation of privacy, otherwise it is questionable that they would have confided their deep concern and their personal experiences and those of others to their Senators; it is unlikely they assumed that their letters condemning the Unification Church would be made available to it with their names intact. The exposure of personal and unpleasant experiences, in some instances involving the alienation of their children, could embarrass the individuals named. Thus, such letters also fall within the scope of "similar" files.[79]

Since all of these documents are "similar" files, the Court must determine whether the second requirement of Exemption 6 is met—that is, whether disclosure of the withheld material would constitute "a clearly unwarranted invasion of personal privacy." [80] To make this determination, the Court is required to perform "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'" [81] In weighing the public interest in disclosure against the privacy interest of the individual, it is the interest of the general public, and not that of the private litigant, that must be considered.[82]

According to the government's affidavit, the only information that has been withheld under this Exemption are names, addresses and other information that would identify third parties. Otherwise, unless another exemption applies, all the information in these documents has been made public. The disclosed material includes the information these documents contain about the Unification Church and the allegations that have been made against it. The privacy interest in keeping the identity of the third parties confidential has already been described. The Court is unable to discover how the disclosure of particular names could contribute significantly to any legitimate public purpose.[83] On the contrary, there is a strong public interest in encouraging citizens to communicate their concerns regarding their communities to their elected representatives. Public disclosure of their identities would have the opposite result of discouraging such communication. To disclose the names could subject these individuals to the fear of harassment and needless humiliation. Similarly, administrative investigations would be seriously jeopardized if individuals could not confidentially call facts to the attention of the appropriate agency. Yet, it is doubtful that many would be willing to give information at all if they could not be assured of privacy.[84] Accordingly, there is also a strong public interest in not discouraging individuals from communicating their concerns to regulatory and investigative agencies by disclosing their names. Based on the absence of a substantial public interest, the

77. Documents 16, 21, 22, 23 & 35.

78. *See Vaughn* index and redacted documents.

79. *Cf. Diamond v. FBI*, No. 79–3770 (S.D.N.Y. Aug. 5, 1981).

80. 5 U.S.C. § 552(b)(6).

81. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976).

82. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir. 1981) (citing *Ditlow v. Shultz*, 517 F.2d 166, 171–72 (D.C.Cir.1975)).

83. *See Ferry v. CIA*, 458 F.Supp. 664, 666–67 (S.D.N.Y.1978).

84. *Evans v. Dep't of Transportation*, 446 F.2d 821, 823 (5th Cir. 1971); *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 782 (S.D.N.Y.1979); *Flower v. FBI*, 448 F.Supp. 567, 571–72 (W.D. Tex.1978); *American Federation of Government Employees, AFL–CIO v. Dep't of the Army*, 441 F.Supp. 1308, 1313–14 (D.D.C.1977).

Court finds that disclosure of the identities of the individuals in the documents would be a clearly unwarranted invasion of their privacy,[85] and, therefore, the Court grants defendants summary judgment with respect to the material withheld under Exemption 6.

Defendants' motion for summary judgment is granted in its entirety and plaintiff's cross-motion for summary judgment is denied. Defendants' motion to dismiss as to the Secretary of State need not be reached.

So ordered.

---

**85.** Further, having obtained the information and allegations concerning itself in defendants' files, one must ponder why plaintiff seeks the identity of the particular individuals involved.