**TIMES NEWSPAPERS OF GREAT BRITAIN, INC., Plaintiff,**

v.

**The CENTRAL INTELLIGENCE AGENCY, et al., Defendants.**

**No. 80 Civ. 686 (MEL).**

United States District Court,
S. D. New York.

May 28, 1982.

Stuart J. Beck, New York City, Williams & Connolly, Washington, D. C., for plaintiff; Kevin T. Baine, William Alden McDaniel, Jr., Washington, D. C., of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Stuart M. Bernstein, Asst. U. S. Atty., New York City, of counsel.

LASKER, District Judge.

This case arises out of the death of David Shipley Holden, the former Chief Foreign Correspondent for The Sunday Times of London. Holden is alleged to have been murdered in Cairo, Egypt in December, 1977. After official inquiry into the death failed to lead to an arrest, the newspaper began its own investigation.

In the course of the investigation, the American affiliate of the London Times, Times Newspapers of Great Britain, Inc., ("the Times") filed a request with the Central Intelligence Agency ("CIA") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") for documents concerning Holden and two persons with whom Holden had become acquainted while in college, Surindar Suri and Dr. Leo Silberman. Silberman died in 1960; Suri's whereabouts were unknown to the Times.

The Times wrote repeatedly to the CIA, requesting a response to its FOIA request. After sixteen months of waiting for a response, the Times filed this action. Several months later, the CIA provided the Times with an index to the thirty-three documents which it had retrieved in the course of its search. Thirty-one of the thirty-three documents were withheld either wholly or in part. The CIA also turned over several documents, discovered in the search of its files, to the Federal Bureau of Investigation ("FBI"), the Department of State, and the National Security Agency ("NSA") for decision by those agencies as to whether the documents at issue should be disclosed. The FBI, State Department and NSA each denied plaintiff's request as to the documents referred to them. The Times appealed each of the decisions; all of the appeals were denied.

The Times moves for an *in camera* inspection by the Court of the withheld documents and the government moves for summary judgment pursuant to Fed.R.Civ.Pr. 56.

As indicated in fuller detail below, the government relies primarily on the national security exemption, § 552(b)(1) of the Act. It argues that withholding the documents is in the interests of "national defense or foreign policy" as defined by § (b)(1) and Executive Order 12065, and that the documents are accordingly exempt from disclosure. The government also relies on exemptions (b)(3) (the collateral statute exemption); (b)(7)(C) (the privacy exemption); (b)(7)(D) (the confidential source exemption); and (b)(6) (the exemption for personnel, medical or "similar" files). Affidavits have been submitted by officials of each of the agencies involved, explaining the reasons for the agencies' decisions to withhold the documents. The government asserts that the affidavits provide the court with sufficient factual basis to uphold the claimed exemptions, and that *in camera* inspection is therefore unnecessary and unwarranted.

The Times answers that the government's affidavits are vague and conclusory, leaving the court unable to make a determination as to the applicability of the claimed exemptions without *in camera* inspection of the documents. Moreover, the Times argues that the fact that most of the documents withheld are over twenty years old suggests that it is particularly inapt for the government to rely on conclusory allegations of national security. Furthermore, the Times contends that where, as here, the time required for an *in camera* inspection would be minimal, there being only 42 documents in dispute, the concerns with burdening the court, relied on in many decisions

which have denied applications for *in camera* inspection, are not present.

The government has submitted the disclosed portions of those documents which were partially disclosed. Most of those documents appear to concern Dr. Silberman: that is, several are memorandum which state "Subject: Silberman, Leo," and others appear, at least from the disclosed portions, to concern only him. After having reviewed the disclosed portions of the documents and the government affidavits, the following rulings are made with respect to the claimed exemptions.

## I. Section 552(b)(1)—The National Security Exemption

▮ The government relies primarily on section 552(b)(1), which exempts from disclosure those matters that are "specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and ... are in fact properly classified pursuant to such Executive Order." The Executive Order pertaining to classification of information on national security grounds is Executive Order ("EO") 12065, 43 Fed. Reg. 28949, published July 3, 1978. EO 12065 provides for the classification of information concerning certain categories of national security, including foreign government information; intelligence activities, sources, and methods; and foreign relations or foreign activities of the United States. EO 12065 § 1–301(b)–(d). However, even within the listed areas of national security, documents may not be classified pursuant to EO 12065 unless the classification authority determines that "unauthorized disclosure [of the document] reasonably could be expected to cause at least identifiable damage to the national security." EO 12065 § 1–302.

The first prong of the (b)(1) exemption is easily met: The government's affidavits establish that the documents sought to be exempted pursuant to 552(b)(1) have been classified pursuant to EO 12065. The question that remains is whether the documents are "in fact properly classified pursuant to

such Executive Order" 5 U.S.C. § 552(b)(1). The nub of the problem is the requirement of EO 12065 that disclosure "reasonably could be expected to cause at least identifiable damage to the national security."

▮ The government bears the burden of establishing that the exemption is proper, and the Court is authorized to examine the documents *in camera* if the government's affidavits are inadequate to sustain the burden. 5 U.S.C. § 552(a)(4)(B). *See Holy Spirit Ass'n v. United States Department of State*, 526 F.Supp. 1022, 1025 (S.D.N.Y. 1981) (Weinfeld, D. J.)

▮ The law in this Circuit provides for a "restrained exercise of discretion with respect to *in camera* inspection," *Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 87 (2d Cir. 1979) (Friendly, J.). The agency's action in withholding material will be upheld if its affidavits: (1) "describe with reasonable specificity the nature of the documents at issue and the claimed justification for nondisclosure;" and (2) "indicate that the requested material logically falls within the claimed exemption." *Holy Spirit, supra*, at 1025. In other words, the court is to defer to the agency's decision where the agency has been reasonably specific in explaining why the documents should not be disclosed, and where, under all the circumstances, the agency's action appears to make sense.

▮ The Times' contentions that the affidavits are vague and conclusory are belied by the amount of detail which they contain. The CIA affiant, Louis J. Dube, has listed each document withheld wholly or in part and explained the asserted need for secrecy as to each portion withheld. For example, Document No. 1, a report dated June 30, 1952, "contains information on Leo Silberman received from a sensitive source" which was withheld in order to "protect the confidential relationship with and information provided by that intelligence source." (Dube Affidavit at 16). Similarly, Document No. 4, a dispatch dated January 22, 1958, contains information from a foreign CIA station concerning Silberman, and was withheld because "any further release

would undoubtedly identify the CIA officer [involved] and the method by which the information was gathered." (Dube Affidavit at 16). Each of the documents withheld is described in similar detail, and it would appear that the government has thereby borne its burden to describe the documents and the claimed justification for their nondisclosure in reasonable detail.

However, the question whether the withheld material "logically falls within the claimed exemption" is more difficult. The government takes the position that because the material relates to national security, the court should defer to the government's decision, citing *Klaus v. Blake*, 428 F.Supp. 37, 38 (D.D.C.1976) (Gesell, D. J.), for the proposition that:

"Determinations of what is and what is not appropriately protected in the interests of national security involves an analysis where intuition must often control in the absence of hard evidence. This intuition develops from experience quite unlike that of most Judges."

However appropriate Judge Gesell's observation may be in the usual case, it is not dispositive in this case. Most of the documents withheld here are over twenty years old; some date back nearly thirty years. Moreover, according to the government's affidavits, the documents appear to be primarily concerned with Dr. Silberman who has been dead since 1960. It may be that in ordinary circumstances, where the government's affiants state that the withheld documents contain information which could reveal CIA personnel, methods or sources, the connection between the government's justification for nondisclosure and the need for national security would be clear. However, there is not a word, either in the affidavits or in the undeleted portions of the documents, to suggest that there is any connection between these documents and any matter which is still of relevance to the national security.

■ It is the Court's duty to determine whether there is a "logical" fit between the government's justification for nondisclosure and the national security. In the absence of any indication that documents twenty to thirty years in age bear any connection to present interests, it would be an abdication of that duty to simply accept the agency's at-best-implied assurance that the connections exist.

■ The problem here, a problem common in this type of case, is that the replying agency is generally so convinced (undeniably sincerely) of the exemptability of the documents and so anxious to disclose the minimum that the law requires—believing it to be their duty not to do more—that the result quite regularly is that the agency puts before the court conclusions without the requisite degree of fact to permit the court to determine whether the conclusions are sound. In effect, the agency says, "trust me to make the decision," but the law requires that the court make the decision. While the court should give "substantial weight" to the agency's determinations, *Hayden v. N. S. A.*, 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790, it does not follow that the court is required to accept or would even be justified in accepting the agency's conclusions simply because the agency explains what its theory is. The court must agree that the theory is sound, and it cannot do so without adequate exposure to the facts.

Here, the government has failed to sustain its burden with respect to exemption 552(b)(1), the national security exemption. The Court will examine *in camera* the documents as to which § 552(b)(1) is the sole claimed exemption unless, within thirty days, the government submits further affidavits which compensate for the deficiencies outlined above.

## II. Section 552(b)(3)—The Collateral Statute Exemption

Under exemption (b)(3) of the FOIA, 5 U.S.C. § 552(b)(3), disclosure under the FOIA is not required with respect to matters that are:

"specifically exempted from disclosure by statute ... provided that such statute

(A) requires that the matters be withheld from the public in such manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."

The statutes relied on by the government as collateral statutes under 552(b)(3) are 50 U.S.C. §§ 403(d)(3) and 403g, the CIA nondisclosure statutes; the National Security Act of 1959, Section 6, the NSA nondisclosure statute; and 8 U.S.C. § 1202(f), the statute prohibiting disclosure of visa-related information.

### A. 50 U.S.C. §§ 403(d)(3) and 403g— The CIA Nondisclosure Statute.[1]

■ Section 403(d)(3) provides in pertinent part that "[T]he Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure." The standard for determining whether a document is exempt under 403(d)(3) is whether the Agency has demonstrated that disclosure of the withheld document "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *Halperin v. CIA*, 629 F.2d 144, 147 (D.C.Cir.1980); *Phillippi v. CIA*, 546 F.2d 1009, 1015 n. 14 (D.C.Cir.1976).

■ As the Court of Appeals for the District of Columbia has noted in *Phillippi v. CIA, supra,* when the collateral statute is § 403(d)3—as here—the inquiry under 552(b)(3) is virtually the same as the inquiry under 552(b)(1), the national security exemption. The *Phillippi* Court's observation applies to the instant case: under 403(d)(3), the agency asks the Court to assume that the disclosure of twenty to thirty year old documents "*reasonably* can be expected to lead to unauthorized disclosure of intelligence sources and methods." *Halperin, supra* (emphasis added). The proposition is a mirror image of the agency's argument,

discussed above, with respect to the national security exemption. The response to the (b)(3) claim is, of course, the same as to the (b)(1) claim. On the basis of the affidavits presented, the agency has not met its burden under the statute, and *in camera* inspection will be ordered unless the agency submits satisfactory affidavits within thirty days.

However, the government's claim for exemption on the basis of collateral statute 50 U.S.C. § 403g is stronger than its claim under § 403(d)(3). Section 403g exempts CIA documents from any disclosure which would reveal CIA "organization, functions, names, official titles, salaries, or numbers of personnel employed." This information is exempt without any showing of "intelligence or security justification. ... The CIA is not required under 403g to make an independent showing of a nexus between the withholding of personnel data and the security of foreign intelligence activities." *Baker v. CIA*, 580 F.2d 664, 669 (D.C.Cir. 1978).

■ The government has not listed those documents which it seeks to withhold, in whole or in part, solely on the basis of 403g, although the affidavits mention that certain documents sought to be withheld contain information such as CIA functions and personnel which would appear to refer to 403g. The government may submit a list of the documents which it seeks to withhold pursuant to section 403g, along with references to the supporting statements in the affidavits. Upon submission of such a list, summary judgment will be granted to the government with respect to the documents specified.

### B. The National Security Agency Act of 1959, Public Law 86–36, Section 6.[2]

■ To qualify for exemption under the National Security Agency Act, the

---

**1.** It is undisputed that Sections 403(d)(3) and 403g meet the requirements of section 552(b)(3) for incorporation into the FOIA. *Weissman v. Central Intelligence Agency*, 565 F.2d 692, 694 (D.C.Cir.1977). Thus, the sole

inquiry is whether the exemptions claimed are proper under sections 403(d)(3) and 403g.

**2.** The National Security Act, Public Law 86–36, meets the criteria for exemption under

agency must show: (1) that the requested documents concern a specific NSA activity; and (2) that disclosure of the document "would reveal information integrally related to this NSA activity." *Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C.Cir.1978), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d· 790. To secure exemption under the NSA Act, it is not necessary to show any likelihood of harm to national security. *See Hayden, supra* at 1390: "A specific showing of potential harm to national security, while necessary for Exemption [552(b)] 1, is irrelevant to the language of Public Law No. 86–36."

 The affidavit of Eugene F. Yeates, the Director of Policy of the NSA, fully complies with the requirements of the NSA Act. He states that the mission of the NSA is to "obtain information from foreign electromagnetic signals and to provide reports derived from such information . . . to national policymakers" (¶ 3) and that "[e]ach of the NSA records being withheld . . . is an intercepted foreign communication" (¶ 8). Moreover, he explains that disclosure of the documents would identify "the communications routes targeted" and the NSA's "processing techniques." (*Id.*) In sum, he has specified the NSA activity with which the documents are concerned, and explained that the information which they contain is "integrally related" to the specific activity in question. Accordingly, summary judgment is granted for the government with respect to the NSA documents.

### C. 8 U.S.C. § 1202(f)—Confidentiality of Visa Documents.[3]

 Documents pertaining to the issuance or denial of visas are required to be kept confidential by 8 U.S.C. § 1202(f). The affidavit of Thomas W. Ainsworth, ¶ 8(a)–(c), establishes that the documents identified as Department of State documents numbers 1, 2 and 3 pertain to the issuance or denial of a visa. Accordingly, the government is entitled to summary judgment with respect to those documents.

### III. Section 552(b)(7)(D)—The Exemption for Confidential Sources

 Section 552(b)(7)(D) provides an exemption from the FOIA for investigatory records, the production of which would "disclose the identity of a confidential source." The FBI relies on (b)(7)(D) in withholding one document retrieved pursuant to the Times' request. The affidavits of Richard A. McCauley, at 17, and John N. Phillips, at 7, state that the document contains information "of such a nature that identity of the source can be determined from a review of the information." Accordingly, the document is exempt from disclosure under 552(b)(7)(D) and the government is entitled to summary judgment with respect to it.[4]

### IV. Section 552(b)(6)—The Exemption for Personnel, Medical and "Similar" Files

Section 552(b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The government has made no showing as to either the nature of the file or the privacy interests at stake. However, because the government is being given an opportunity to supplement its affidavits with respect to the other withheld documents, it may also supplement the record with respect to the two documents as to which exemption (b)(6) is claimed.

 Finally, the government moves to dismiss the complaint as against the individuals who are named as defendants. "[T]he Freedom of Information Act authorizes suit against federal agencies, not against indi-

---

552(b)(3). *See Founding Church of Scientology v. U.S.A.*, 610 F.2d 824, 828 (D.C.Cir.1979).

**3.** Section 1202(f) has been recognized as being within the scope of exemption 552(b)(3). *Church of Scientology of California v. Department of State*, 493 F.Supp. 418, 423 (D.D.C. 1980).

**4.** In view of the grant of summary judgment under (b)(7)(D), it is unnecessary to consider the FBI's contentions concerning the same document under 552(b)(7)(C).

viduals." *Morpurgo v. Board of Higher Education*, 423 F.Supp. 704, 714 n. 26 (S.D. N.Y.1976) (Weinfeld, D. J.). Accordingly, the individual defendants are dismissed from the action.

Accordingly, partial summary judgment may be entered for the government with respect to the documents withheld pursuant to the National Security Act of 1959, 8 U.S.C. § 1202(f) and Section 552(b)(7)(D). Upon submission of a satisfactory index, as discussed in Section IIA of this opinion, partial summary judgment may also be entered with respect to the documents withheld pursuant to 50 U.S.C. § 403g. *In camera* inspection will be ordered as to the documents withheld pursuant to section 552(b)(1), 50 U.S.C. § 403(d)(3) and section 552(b)(6) unless within thirty days the government submits affidavits adequate under Sections I, II A and IV of this opinion.

This action is dismissed with respect to the individual defendants.

It is so ordered.